MARIE CANNON PHILLIPS v. HOWARD LEE PHILLIPS, JR., Individually and
as Executor of the Estate of Howard Lee Phillips; HOWARD LEE
PHILLIPS III; JOHN BRADFORD PHILLIPS; and EDGAR W. TANNER,
Clerk of the Superior Court of Rurtherford County

No. 75

(Filed 16 March 1979)

1. **Wills § 61 — right of successive spouse to dissent — intestate share — no considera-
tion of reduced distributive share**

   The right of a "second or successive spouse" to dissent from her deceased
   spouse's will was determined by the amount of her "intestate share" pursuant to
   G.S. 30-1(a) without reference to her ultimate distributive share under G.S.
   30-3(b).

2. **Wills § 61 — right to dissent — meaning of "intestate share"**

   The "intestate share" of a surviving spouse is the quantum of real and per-
   sonal property he or she would receive under the provisions of the Intestate Suc-
   cession Act, G.S. Ch. 29.

3. **Wills § 61 — right to dissent — determination of net estate**

   Since the intestate share of a surviving spouse is ordinarily a percentage of
   the decedent's net estate, in establishing whether the surviving spouse may dis-
   sent from decedent's will, the amount of the net estate must be determined
   within limits which will permit the court to ascertain with substantial accuracy
   whether the value of the intestate share of the surviving spouse is less or greater
   than the value of the property passing to her inside and outside the will.

4. **Wills § 61 — right to dissent — determination of net estate — deduction of widow's
year's allowance**

   The amount allotted to plaintiff as her widow's year's allowance should have
   been subtracted from decedent's gross estate to ascertain net estate for the pur-
   pose of determining whether plaintiff could dissent from decedent's will.

590

5. **Wills § 61— right to dissent—determination of net estate—deduction of estimated federal estate tax**

For the purpose of determining whether a surviving spouse may dissent, an estimation of the federal estate tax must be deducted in approximating the "net estate." This estimate is not an estimate of the actual tax which will be paid on the estate but rather an estimate of the tax which would be paid if the surviving spouse received the share of the "net estate" specified by G.S. 30-1(a)(1), including any marital deduction the estate would receive as a result of her taking that share.

6. **Wills § 61— right to dissent—determination of net estate—interest and penalties on federal estate tax**

Interest and penalties on the federal estate tax may not be considered when computing the "net estate" for the purpose of determining whether a surviving spouse can dissent.

7. **Wills § 61— right to dissent—determination of net estate—deduction of estimated costs of administration**

In determining the right of a surviving spouse to dissent from the deceased spouse's will, an estimation of the costs of administration of the estate, including the executor's commissions and reasonable attorneys' fees incurred in the administration of the estate, must be deducted in approximating the value of the "net estate." However, for the limited purpose of determining the surviving spouse's right to dissent, the deduction for attorneys' fees should not include any fees generated during litigation over the determination of that right.

8. **Wills § 61— right to dissent—when determined**

The determination of a surviving spouse's right to dissent should not be postponed until the actual value of the net estate can be ascertained, i.e., at the time of distribution. Rather, the clerk (or judge) should determine the right to dissent whenever, in his judgment, the value of the "net estate" can be estimated with reasonable accuracy.

Justices BRITT and BROCK took no part in the consideration or decision of this case.

ON defendants' petition for discretionary review of the decision of the Court of Appeals, reported in 34 N.C. App. 428, 238 S.E. 2d 790 (1977), affirming the judgment for plaintiff entered by *Griffin, J.,* at the 29 October 1976 Session of RUTHERFORD Superior Court, docketed and argued as case No. 48 at the Spring Term 1978.

Action for a declaratory judgment under G.S. 1-253 (1966) upon stipulated facts.

Plaintiff, "a second or successive spouse," is the widow of Howard Lee Phillips (testator), who died testate on 8 April 1975.

No children were born to their marriage. Testator, however, was survived by one son, defendant Howard Lee Phillips, Jr., the child of a prior marriage. To him and his two children, defendants Howard Lee Phillips III and John Bradford Phillips, testator bequeathed and devised his entire estate, share and share alike. The will, which was executed on 6 June 1974, prior to testator's marriage to plaintiff on 22 December 1974, made no provision for her. As the beneficiary in a policy of life insurance, plaintiff received $70,000; and this was all the property she received "in any manner outside the will" in consequence of testator's death.

The will was duly probated, and letters testamentary were issued to Howard Lee Phillips, Jr., on 16 April 1975. In the "90-Day Inventory," filed on 8 July 1975, the executor valued testator's total estate at $326,936: personalty, $64,519; realty, $262,417. For the valuation of the realty the executor relied upon an itemized appraisal made for him on 30 May 1975 by a building contractor and realtor of Rutherford County.

On 2 September 1975, pursuant to N. C. Gen. Stats., Ch. 30, Art. 4 (G.S. 30-15 through 30-33) (1966), plaintiff filed an application for a year's allowance. She claimed $6,834.42 and the executor paid her this amount.

On 11 September 1975, acting under N. C. Gen. Stats., Ch. 30, Art. 1 (G.S. 30-1 through 30-3) (1966), plaintiff filed a dissent to testator's will, in which she alleged the total value of his estate to be at least $652,594. Relying upon an appraisal made for her on 30 July 1975 by a realtor-appraiser and licensed broker of Gastonia, North Carolina, plaintiff averred the value of testator's realty to be $588,075. She and the executor being in disagreement, pursuant to G.S. 30-1(c), plaintiff prayed the court to appoint one or more disinterested persons to determine and establish the value of testator's estate at the time of his death. In consequence, on 20 October 1975, the clerk appointed Charles D. Owens, whom he found to be "a licensed and competent real estate broker, familiar with the value of land in Rutherford County," to appraise the property of the estate. On 20 October 1975 Owens filed with the court an itemized appraisal, in which he determined the fair market value of testator's realty on 8 April 1975 to have been $238,452.

Thereafter, on "the _____ day of November 1975," plaintiff tendered to the Clerk an order which contained findings and conclusions summarized as follows: On the day of testator's death the total value of his estate was $302,971.50: realty, $238,452.50; personalty, $64,519. Under G.S. 30-3(b), plaintiff's "intestate share" of the estate is $75,742.87 (one fourth). Plaintiff, having received nothing in the will and only $70,000 outside the will, is entitled to dissent from it and to receive one fourth of the net estate, "including one-fourth of the personal property and one-fourth undivided interest in the real property." The clerk never signed this order. After 30 October 1975 he made no orders.

In order to determine her right to dissent, on 11 March 1976, plaintiff brought this action for a declaratory judgment. She prayed the court to declare her right (1) to dissent from her husband's will under G.S. 30-1, and (2) to receive, as a surviving successive spouse, one fourth of his net estate, "including one-fourth (¼) undivided interest in the real property and rental from her interest in said real property from April 8, 1975."

When this case, having been regularly scheduled for trial, was called on 14 September 1976 all parties were present in court with their respective counsel of record. At that time counsel for the plaintiff and defendants "stipulated and agreed as to the findings of fact and all parties acknowledged that this was a matter of law for the court, and that both parties waived any right they might have to a jury trial in this cause." The "findings of fact" in addition to those heretofore stated are set out in the judgment of the trial judge and summarized as follows (enumeration ours):

1. At the time of testator's death his realty was encumbered by deeds of trust totaling $82,594.35. Since his death the estate has accumulated rents, money from the sale of cattle, profits from the operation of a supermarket, and the payments upon deeds of trust.

2. Defendant executor, "being of the opinion that the question of the right of the widow to dissent . . . had first to be determined," has neither filed nor paid any federal or state inheritance taxes. He has now estimated the federal estate tax to be $39,394.69 plus accumulated interest and penalties in the amount of $12,316.76. The State inheritance tax has been estimated at

Phillips v. Phillips

$7,384.18, with accumulated interest and penalties totaling $582.72.

3. For the purpose of determining plaintiff's right to dissent under the provisions of G.S. 30-1, the parties concede that the value of testator's personalty was $64,519 as shown in the 90-Day Inventory, and that the clerk had accepted Mr. Owens' valuation of the realty at $238,452.50, making the total value of the estate $302,971.50 at the time of testator's death.

4. "The aggregate value in property passing in any manner under or outside the will to the plaintiff as the surviving spouse is Seventy Thousand ($70,000.00) Dollars, received from an insurance policy and widow's year's allowance in the sum of $6,834.42."

Upon the facts stipulated Judge Griffin concluded as a matter of law:

1. Plaintiff having "received less than her intestate share from all sources under or outside of her deceased spouse's will" is entitled to dissent under G.S. 30-1(a)(1).

2. Since plaintiff is a surviving successive spouse and testator is survived by one child of a former marriage and no lineal descendants from his marriage to plaintiff, she is entitled to one fourth of testator's estate as defined by G.S. 29-2(5).

3. The widow's year's allowance is not to be charged against her share in this estate.

From this judgment defendant appealed to the Court of Appeals, which affirmed the judgment. Upon defendants' petition we allowed discretionary review.

*Roberts and Planer by Joseph B. Roberts III for plaintiff appellee.*

*Robert W. Wolf and George R. Morrow for defendant appellants.*

SHARP, Chief Justice.

The question in this case is whether the facts found by the trial judge and stipulated by the parties are sufficient to establish

the right of plaintiff, a childless surviving successive spouse, to dissent from the will of her deceased husband, who is survived by one son of a prior marriage.

The right of a surviving spouse to dissent from his or her deceased spouse's will is conferred by statute "and may be exercised at the time and in the manner fixed by statute." *Vinson v. Chappell,* 275 N.C. 234, 166 S.E. 2d 686 (1969). The "time and manner" is fixed by G.S. 30-2, which permits any spouse entitled to dissent to do so within six months of the date letters testamentary were issued to the decedent's personal representative. The clerk may extend the time if litigation affecting the share of the surviving spouse is pending at the expiration of the time allowed. In this case the right to dissent is conferred by N. C. Gen. Stats. § 30-1(a) (1976), the law in effect on 8 April 1975, the date of testator's death. This secton provided:

"§ 30-1. Right of dissent.—(a) A spouse may dissent from his deceased spouse's will in those cases where the aggregate value of the provisions under the will for the benefit of the surviving spouse, when added to the value of the property or interests in property passing in any manner outside the will to the surviving spouse as a result of the death of the testator:

(1) Is less than the intestate share of such spouse, or

(2) Is less than one half of the deceased spouse's net estate in those cases where the deceased spouse is not survived by a child, children, or any lineal descendant of a deceased child or children, or by a parent."

Effective 1 October 1975, G.S. 30-1(a) was amended by adding a new subdivision as follows: "(3) Is less than the one half of the amount provided by the Intestate Succession Act in those cases where the surviving spouse is a second or successive spouse and the testator has surviving him lineal descendants by a former marriage and there are no lineal descendants surviving him by the second or successive marriage."

This subsection squarely addresses the factual situation of the instant case. However, since the General Assembly expressly

limited its application "to the estates of decedents dying after 1 October 1975," it has no application here.

At this point it is necessary to take note of Section (b) of G.S. 30-3, which will determine the distributive share of plaintiff in the net estate of her deceased husband if her right to dissent is upheld. This section provides: "Whenever the surviving spouse [who dissents to the will of the deceased spouse] is a second or successive spouse, he or she shall take only one half of the amount provided by the Intestate Succession Act for the surviving spouse if the testator has surviving him lineal descendants by a former marriage but there are no lineal descendants surviving him by the second or successive marriage."

Thus, if it be determined that plaintiff is entitled to dissent, the parties concede the correctness of the trial court's conclusion that she will be entitled to one fourth of the decedent's net estate (one-half of her intestate share). *See Vinson v. Chappell,* 275 N.C. 234, 238, 166 S.E. 2d 686, 689 (1969).

[1] We find no merit in defendants' contention that because G.S. 30-1(a) and G.S. 30-3(b) are in *pari materia,* plaintiff should have a right to dissent only if the property she receives within and without the will is less than the share she would take under G.S. 30-3(b). As a "successive spouse," plaintiff will receive only one half of an intestate share under G.S. 30-3(b) if her right to dissent is established. Defendants argue therefore that she should be allowed to dissent only if the $70,000 she received outside the will is less than one half of her intestate share. Clearly, under the facts of this case, if that is to be the test, plaintiff will have no right to dissent.

It is true that statutes dealing with the same subject matter must be construed together. "When, however, the section dealing with a specific matter is clear and understandable on its face, it requires no construction." *Utilities Comm. v. Electric Membership Corp.,* 275 N.C. 250, 260, 166 S.E. 2d 663, 670 (1969). *See* 12 Strong's N. C. Index 3d *Statutes* § 5.5 (1978). The term "intestate share," as used in G.S. 30-1(a)(1) is clear and unambiguous. That the legislature provides one criterion for determining whether the right to dissent exists and another for determining the consequences of the dissent creates no ambiguity.

The absence of any ambiguity in G.S. 30-1(a)(1) likewise refutes defendants' argument that the 1975 amendment which added subsection (3) to G.S. 30-1(a) manifests the General Assembly's intent that the term "intestate share" in subsection (1) be defined with reference to the consequences of the dissent. While the purpose of an amendment to an ambiguous statute may be presumed to be "to clarify that which was previously doubtful," it is logical to infer that an amendment to an unambiguous provision, such as G.S. 30-1(a), evinces an intent *to change* the law. *Taylor v. Crisp*, 286 N.C. 488, 497, 212 S.E. 2d 381, 387 (1975); *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E. 2d 481 (1968).

Nor does attributing to G.S. 30-1(a)(1) its plain and definite meaning lead to an absurd result, as defendants contend. Common sense does not compel the assumption the legislature intended that the comparative figure used to determine a spouse's right to dissent (intestate share) should necessarily equal the distributive share of a dissenting spouse. The language of G.S. 30-1(c), which establishes a valuation procedure "[f]or the purpose of establishing the right of dissent" and mandates that the value so determined "be used exclusively for [that] purpose," indicates that the General Assembly anticipated a variance between this valuation and the ultimate distributive share. Further, under our present law, several situations exist where the right to dissent is determined by use of a figure which is more or less than the amount which would actually be received as a consequence of the spouse's dissent. *See* Note, *Does North Carolina Law Adequately Protect Surviving Spouses?*, 48 N.C.L. Rev. 361 (1970).

We hold therefore that the plaintiff's right to dissent is determined by subsection (1) of G.S. 30-1(a) without reference to G.S. 30-3(b).

To determine whether a surviving spouse has the right to dissent from the deceased spouse's will it is necessary to ascertain and compare two figures. The first is the aggregate value of the property passing to the surviving spouse under the will and outside the will.

G.S. 30-1(b) provides, among other things, that the value of proceeds of insurance policies on the life of the decedent received

by the spouse shall be included in the value of property passing to the surviving spouse as a result of the testator's death. Subsection (c) requires that the estate of the deceased spouse, and any property passing outside the will to the surviving spouse as a result of the testator's death, be determined and valued as of the date of death. When the personal representative and the surviving spouse fail to agree, G.S. 30-1(c) directs the clerk to appoint one or more disinterested persons to determine and establish the value of the property. It further provides that such determination and valuation "shall be final for determining the right of dissent and shall be used exclusively for this purpose."

Here, nothing passed to plaintiff under the will. Only the proceeds of a life insurance policy on testator's life, $70,000, came to her outside the will. Thus, in this case, the first figure is $70,000.

The second figure to be ascertained is the value of plaintiff's intestate share in testator's estate. If this figure is more than $70,000, plaintiff has the right to dissent; otherwise not. Obviously, therefore, the right to dissent cannot be determined without first ascertaining the value of the surviving spouse's intestate share in the deceased spouse's estate.

[2]  The "intestate share" of a surviving spouse is the quantum of real and personal property he or she would receive under the provisions of N. C. Gen. Stat., ch. 29 (1976), known as the Intestate Succession Act. The section of the Act which applies to plaintiff's situation, G.S. 29-14(1), provides: "If the intestate is survived by only one child or by any lineal descendant of only one child, [the surviving spouse shall receive] one half of the net estate, including one half of the personal property and a one half undivided interest in the real property."

"Net estate" as used in the Intestate Succession Act "means the estate of a decedent, exclusive of family allowances, costs of administration, and all lawful claims against the estate." G.S. 29-2(5).

[3]  Since the intestate share of any surviving spouse, or other heir, is ordinarily a percentage of the decedent's net estate, the amount of the net estate must be determined within limits which will permit the court to ascertain with substantial accuracy whether the value of the intestate share of the surviving spouse

is less or greater than the value of the property passing to her in and outside the will. This determination, however, may not be an easy task. Indeed, in some cases, it may not be possible.

Prior to the time the personal representative files his final account, it will seldom, if ever, be possible to determine with complete accuracy the value of the testator's net estate and the intestate share of the surviving spouse. In some instances, the net value of the estate can be ascertained with sufficient accuracy during the six months within which the surviving spouse is permitted to dissent to enable him or her to determine the right. We note, however, that creditors also have six months after the first publication of the executor's notice to creditors in which to file claims against the estate. G.S. 28A-19-3. Even ascertaining the amount of the debts may prove difficult when the claims are contingent or are being disputed by the executor. *See* G.S. 28A-19-5, -15, -16 (1976).

The most troublesome problem of valuation concerns the federal estate tax. Until this figure is ascertained with a reasonable degree of certainty, the clerk will be unable to determine the value of the decedent's "net estate." Under § 6075 of the Internal Revenue Code the estate tax return need not be filed until 9 months after the decedent's death. I.R.C. § 6075(a). If the Internal Revenue Service grants an extension, the return may be filed as late as 15 months after the date of decedent's death. I.R.C. § 6081(a). Further, if the Government chooses to contest the executor's valuation of the estate, always a realistic possibility when an estate of any size is concerned, a final valuation for tax purposes may be postponed as much as two years after the testator's death.

Without revealing his modus operandi, upon the facts stipulated by the parties, the trial judge concluded "as a matter of law" that plaintiff "received less than her intestate share from all sources under or outside of her deceased spouse's will." Thus the Court of Appeals was confronted with the question which now confronts us: Do the stipulated facts establish that the $70,000 plaintiff received outside the will is less than what she would have received had her husband died intestate?

The Court of Appeals, upon the following calculations, reached the same conclusion as did the trial judge: From $302,971.50,

the stipulated value of testator's gross estate, it subtracted $134,305.80. This figure is the sum of the following items: $82,594.35, the mortgage indebtedness on testator's realty; $39,394.69, the executor's estimate of the federal estate tax; $1,877.16, interest on the unpaid tax; $10,439.60, penalty for failure to pay the estate tax. "From the deduction of these amounts," the Court of Appeals said, "net estate can be reasonably ascertained — in the amount of $168,655.70 — for the purpose of computing the plaintiff's intestate share and establishing her right to dissent. . . . Since the aggregate value of property passing to plaintiff under and outside her deceased spouse's will — $70,000 — is *less than* her intestate share, plaintiff is entitled to dissent from the will." *Phillips v. Phillips*, 34 N.C. App. 428, 434, 238 S.E. 2d 790, 794 (1977). This arithmetic may be correct, but the formula is not.

[4]    To ascertain "net estate" under G.S. 29-2(5) it is necessary to subtract from the value of the gross estate, "family allowances, costs of administration, and all lawful claims against the estate." In its computations the Court of Appeals erroneously failed to deduct the $6,834.42 allotted to plaintiff as her year's allowance; it did not consider the costs of administration; and it erroneously deducted the interest and penalties attributable to the executor's failure to pay the federal estate tax.

[5]    Certainly the federal estate tax is one of the "lawful claims" against testator's estate, and the widow's intestate share of the estate is to be computed after its deduction. *Tolson v. Young*, 260 N.C. 506, 133 S.E. 2d 135 (1963). It is equally certain that the "net estate" cannot be either determined or fairly estimated without taking into consideration the federal estate tax. Yet the amount of the estate tax which will ultimately be due may vary substantially according to whether a surviving spouse can or cannot dissent. *See, e.g., In re Estate of Connor*, 5 N.C. App. 228, 168 S.E. 2d 245 (1969). Obviously, therefore, for purposes of determining whether a surviving spouse may dissent, it is an estimation of the federal estate tax which must be deducted in approximating the "net estate"; so the question becomes how to arrive at an estimate.

In the case before us the parties stipulated that the estimated amount of the federal estate tax for the purposes of

determining the "net estate" was $39,394.69. This figure was apparently based on the assumption that the property would pass according to the terms of testator's will. Having stipulated to that figure, the parties are in no position to question its accuracy on this appeal. We note, however, that the estimate required by G.S. 30-1(a) is not an estimate of the actual tax which will be paid on the estate but rather an estimate of the tax which would be paid if plaintiff received the share of the "net estate" specified by G.S. 30-1(a)(1), including any marital deduction the estate would receive as a result of her taking that share.

**[6]** The parties also agreed that at the time of the trial interest on the federal estate tax ($1,877.16) and penalty charges ($10,439.60) due to the delay in filing and payment had accumulated. Because of the stipulation plaintiff cannot object to the value assigned to these charges, but she can and does contend that these charges should not be deducted in the estimation of "net estate" for purposes of determining whether a surviving spouse can dissent.

Insofar as these interest and penalty charges are "lawful claims against the estate," they must be deducted before a distributive share can be determined. This does not mean, however, that the executor in a proper case may not be held personally liable for the interest and penalties or that such charges should be considered when determining whether a surviving spouse is entitled to dissent. It commonly occurs, as here, that the interests of the executor, the party responsible for filing the return and paying the tax debt, are antagonistic to those of the surviving spouse who is attempting to dissent. The legislature could not have intended to confer upon executors the power to extinguish any potential right to dissent merely by delaying the filing of an estate tax return, or payment of the principal of the debt, until interest and penalty charges sufficiently erode the "net estate." The date for filing a return, absent an extension, and the date upon which payment of the tax is due are the same (nine months from the date of death), and no interest or penalties accrue prior to that time. *See* I.R.C. § 6651; Treas. Reg. §§ 20.6075-1, 20.6081-1, 20.6151. While in *actuality* some delays in administration may be unavoidable, it appears reasonable to assume for the purpose of estimating the value of the net estate that an executor will comply with the time limits embodied in the

federal estate tax provisions. Accordingly, we hold that interest and penalties on the federal estate tax should not be considered when computing the "net estate" for the purpose of determining whether a surviving spouse can dissent.

On the basis of the stipulated facts, we now attempt to estimate testator's net estate. From $302,971.50, the value of testator's gross estate, we deduct $128,823.36, the sum of the following items: The widow's year's allowance, $6,834.42; lawful claims against the estate, $82,594.35 (mortgage debt); estimated federal estate tax exclusive of interest and penalties, $39,394.59. The difference is $174,148.14. The difference between one half of this figure and $70,000 is $17,074.07.

[7] Despite the fact that the parties agreed that this case was to be determined as a matter of law upon the stipulated facts, they failed to include an estimate of the costs of administration, an item which G.S. 29-2(5) specifically provides shall be taken into account in determining "net estate." Costs of administration include the executor's commissions and "reasonable sums for necessary charges and disbursements incurred in the management of the estate." G.S. 28A-23-3. Reasonable attorneys' fees come within the latter item. *See* M. Edwards, *North Carolina Probate Handbook* §§ 33.1-.5 (2d ed. 1975), 2 N. Wiggins, *Wills and Administration of Estates in North Carolina* §§ 249-50 (1964) and cases cited therein.

For this Court to determine plaintiff's right to dissent on the facts stipulated, we would have to conclude as a matter of law that reasonable commissions and attorneys' fees could not exceed $17,074.07. This we cannot do.

The amount of the executor's commissions, though limited to 5% of the receipts and disbursements and subject to review by the superior court judge on appeal, is addressed to the discretion of the clerk in the first instance. Attorneys' fees are also subject to the court's approval. Neither attorneys' fees nor commissions can be finally determined until the settlement of the estate. G.S. 28A-23-3(c), (d).

As a judge of probate, the clerk has supervised the administration of the estate from the beginning and presumably will have some idea of the value of the service which the executor and his attorney have rendered the estate. Upon a record silent on

these matters, the appellate court cannot assume the time expended, responsibility and trouble involved, and the skill required to settle the estate.

Since the cost of administration must be estimated before the net value of the estate can be approximated, this case must be remanded to the Superior Court for a determination of that figure. The cost of administration should include reasonable attorneys' fees incurred in the course of administering the estate. However, for the limited purpose of determining plaintiff's right to dissent, that figure should not include any fees generated during litigation over the determination of that right. Because it is apparent that the federal estate tax in this case was estimated on the basis of a mistaken assumption of law, that figure should also be recomputed in accordance with the rule enunciated in this opinion.

Because the clerk was apparently unable to cope with either the legal or factual complexities raised by plaintiff's dissent, the question of her right came before the superior court judge in an action for declaratory judgment. Therefore, on remand, the determination of the value of the "net estate," and consequently of plaintiff's right to dissent, must be made by the superior court judge on the basis of facts found by him or stipulated by the parties.

[8] Because the parties erroneously assumed that all facts necessary to determine testator's net estate were stipulated in the trial court's judgment, this appeal does not present directly the question of when the right to dissent should be determined. Nevertheless, the Court of Appeals chose to address that issue. *Phillips v. Phillips,* 34 N.C. App. 428, 238 S.E. 2d 790 (1977). That Court concluded that a surviving spouse's right to dissent should not be "finally established until 'net estate' is ascertained." 34 N.C. App. at 433, 238 S.E. 2d at 793. Although this statement is not free from ambiguity, it seems to imply that the right to dissent is not to be finally established until the actual value of the net estate can be ascertained, *i.e.,* at the time of distribution.

This proposed solution to the problems of valuation posed by the statute must be rejected. First, the legislature obviously intended for the right to be determined as quickly as possible after the dissent is filed. To this end G.S. 30-1(c) establishes a simple

and conclusive procedure for valuing the property passing to the dissenting spouse within and without the will. Second, and most decisive, the Court of Appeals' approach fails to take into account the effect of a spouse's right to dissent on the amount of federal estate taxes. A spouse's elective share will normally qualify for the marital deduction under § 2056 of the Internal Revenue Code. *See* Treas. Reg. § 20-2056(e)-2(c) (1958); 4 J. Mertens, The Law of Federal Gift and Estate Taxation § 29.14 (1959 and Supp. 1972); 1 J. Rasch, Harris-Handling Federal Estate & Gift Taxes § 251 (3d Ed. 1978). Because of the size of the elective share provided by G.S. 30-3, it will typically constitute the single largest deduction from the testator's gross estate. Under the rule proposed by the Court of Appeals, the executor would usually be forced to file the federal estate tax return before he knew whether the estate qualified for the marital deduction. His only alternative would be to delay the filing of the return and risk the accumulation of interest and penalties, or to go through the cumbersome process of seeking a refund.

In our view, the only practical solution to the problems involved is for the clerk (in this case the judge) to determine the widow's right to dissent whenever, in his judgment, the value of the "net estate" can be estimated with reasonable accuracy. This approach is apparently consistent with the present practice of the probate bar. *See* M. Edwards, North Carolina Probate Handbook § 28-10 (2d Ed. 1975). Of course, where the testator's personal representative and the dissenting spouse, dealing at arm's length, are able to agree upon the value of the "net estate," the clerk or the court will ordinarily abide by this agreement in determining the right to dissent. This approach parallels the procedure set out in G.S. 30-1(c) for establishing the value of property passing to the widow within and without the will.

We recognize that no judicially imposed solution can adequately redress the problems of valuation raised by our dissent statutes. While the use of an estimated "net estate" may work well where the right to dissent is clear-cut, it will inevitably cause problems in cases such as this one where that right is closely contested. Furthermore, it is apparent that the statutory scheme, which was intended to provide a relatively simple procedure for determining the right to dissent, will in many cases prove to be complex, time-consuming, and expensive. An unin-

tended effect of these drawbacks may be to discourage a deserving spouse from exercising the right to dissent.

Most of the problems of valuation and interpretation concern G.S. 30-1, the statute outlining the surviving spouse's right to dissent. Once the right is established it is relatively easy to compute the amount of the surviving spouse's distributive share. With the exception of the community property states, the vast majority of American jurisdictions give a surviving spouse an unqualified right to dissent from a deceased spouse's will. *See* Prentice-Hall, 2 Wills, Estates and Trusts ¶ 2735 (1975) for a list of states with elective shares. North Carolina is one of the few jurisdictions which grant only a qualified right. Bolich, *Election, Dissent, and Renunciation,* 39 N.C.L. Rev. 17, 30 (1960).

Under G.S. 30-1(a)(1) a surviving spouse has a right to dissent only when the total value of property received under and outside the will is less than what he or she would have received had the deceased spouse died intestate. As to property passing under the will, there is no need to qualify the right to dissent since a widow must renounce all rights under the will of the deceased in order to take an elective share. When the will adequately provides for a surviving spouse, economic self-interest will prevent a dissent.

The apparent purpose of G.S. 30-1 is to deny a surviving spouse a share of the testator's "net estate" when he or she has been adequately provided for by property passing outside the probate estate. Unlike property passing under the will, non-probate assets need not be renounced in order to take a dissenting share. As at least one commentator has pointed out, however, the statute may fall far short of accomplishing that goal.[1] For example, when a spouse receives a nontestamentary gift which is only slightly less than her intestate share, he or she will be entitled to keep both the non-probate assets and the elective share provided by G.S. 30-3. This may result in a "windfall" to the surviving spouse at the expense of beneficiaries under the will. *See* 48 N.C.L. Rev. at 365. The statute also fails to foreclose the possibility of intentional disinheritance. A surviving spouse's elective share under G.S. 30-3 is based on a percentage of the decedent's "net estate." Because the net estate includes only probate assets, there is nothing in the statute to prevent a testator from

---

1. *See* Note, *Does North Carolina Law Adequately Protect Surviving Spouses?* 48 N.C.L. Rev. 361 (1970).

disinheriting his spouse by leaving his property to others through the use of will substitutes.[2] *See, e.g.,* Landon, *Elective Share Rights — What's Left for the Spouse Who Wants to Avoid Them?* 113 Tr. & Est. 82 (1974).

Additional equitable considerations may arise when the dissent is filed by a successive spouse. Because plaintiff here is a "second or successive spouse," she will receive only one half of an intestate share (one fourth of the net estate) under G.S. 30-3(b) if it is determined on remand that she has a right to dissent. Apparently this statute was passed to protect a testator's children by a former marriage against a "fortune-hunting" second or successive spouse. However, as former Chief Justice Bobbitt observed in *Vinson v. Chappell,* 275 N.C. 234, 166 S.E. 2d 686 (1969), G.S. 30-3(b) contains "seeds of inequity." In particular he pointed to the following problems:

"1. If the 'second or successive spouse' is the decedent, and is not survived by a child or lineal descendant of a former marriage, if any, the surviving husband (wife), if he (she) elects to dissent will receive the *full* intestate share of a surviving spouse. . . . It would seem that, in a factual situation in which one spouse would be reduced to one-half of the share to which he or she would be entitled if the other died intestate, the rule as to *one-half* should be applied equally to both parties to the marriage.

"2. The inferior rights of the surviving 'second or successive spouse' do not depend upon whether a child was born of her (his)

2. The Uniform Probate Code proposes one possible solution to both of these problems. *See, generally,* 8 Uniform Laws Annotated—Estate Probate and Related Laws (Master Ed. 1972); Clark, *The Recapture of Testamentary Substitutes to Preserve the Spouse's Elective Share: An Appraisal of Recent Statutory Reforms,* 2 Conn. L. Rev. 513 (1970); Kurtz, *The Augmented Estate Concept under the Uniform Probate Code: In Search of an Equitable Elective Share,* 62 Iowa L. Rev. 981 (1977); Robertson, *How the Family Fares: A Comparison of the Uniform Probate Code and the Ohio Probate Reform Act,* 37 Ohio St. L.J. 321 (1976).

Recognizing that the probate process is no longer the exclusive or even the major means of transmitting wealth, Section 2-202 of the Code defines the "augmented estate" against which the right of election is measured to include not only probate assets but also certain testamentary substitutes, which if excluded could be used to defeat the spouse's legitimate claims. Under Section 2-201 a surviving spouse may elect to take a ⅓ share in the decedent's "augmented estate," which is defined to include probate property, gratuitous lifetime transfers to persons other than the surviving spouse, and the property of the spouse derived from the decedent. The Code also addresses the problem of "double compensation," which may occur under G.S. 30-1, by crediting against the spouse's elective share any property he or she may receive within or without the will. Uniform Probate Code, Section 2-207. Thus, if the spouse has already received property in excess of one third of the augmented estate, she receives no additional share by exercising her right to dissent. A number of states have adopted elective share statutes based on the UPC. *See, e.g.,* N.D. Cent. Code Ann. § 30.1-05 (1976); Utah Code Ann. §§ 75-2-201 to -207 (1978).

In the vast majority of states the disinherited spouse is simply given an unqualified right to a specified share of the decedent's probate assets. From as early as 1784 to 1 July 1960, North Carolina gave such a right to the widow. Laws of 1784, ch. 22, § 8; 1959 N. C. Sess. Laws, ch. 880. Although this approach fails to take non-probate assets into account, it offers, *inter alia,* the compensations of certainty, ease of administration, the avoidance of expensive and time-consuming litigation such as this, and—in all probability—results in no more inequities than does the present statutory scheme.

marriage with the decedent; rather, they depend upon whether such child (or lineal descendant) *survives* the decedent.

"3. G.S. 30-3(b) is applicable when the decedent is *survived* by a child or lineal descendant of a former marriage *even if* the decedent's will leaves nothing to such child or lineal descendant.

"Whether G.S. 30-3(b) applies does not depend at all upon such considerations as: (1) The comparative durations of the first and second marriage; (2) whether the former marriage was terminated by death or by divorce; (3) the age(s) of the child or children of the former marriage at the time of the second or successive marriage; and (4) the age(s) of the child or children of the former marriage and their financial status at the time of the death of the decedent." 275 N.C. at 238-39, 166 S.E. 2d at 690.

Solutions to the problems created by our present dissent statutes must, of course, await legislative action. In the meantime, bench and bar, executors and surviving spouses must cope with the existing statutes as best they can.

The decision of the Court of Appeals is reversed. The case is remanded to that court with directions that it be returned to the Superior Court of Rutherford County for further proceedings in accordance with this opinion.

Reversed.

Justices BRITT and BROCK took no part in the consideration or decision of this case.