IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1007

Filed: 20 October 2020

Wake County, No. 18 CVS 5916

MARY COOPER FALLS WING, Plaintiff,

v.

GOLDMAN SACHS TRUST COMPANY, N.A., et al., Defendants,

Wake County, No. 18 CVS 5830

RALPH L. FALLS, III, et. al., Plaintiff,

v.

GOLDMAN SACHS TRUST COMPANY, N.A., et al., Defendants.

Appeal by by plaintiffs from order entered 20 May 2019 by Judge Edwin G.

Wilson, Jr. in Wake County Superior Court. Heard in the Court of Appeals 24

September 2020.

> *Womble Bond Dickinson (US) LLP, by Johnny M. Loper, Elizabeth K. Arias and Jesse A. Schaefer, for plaintiff-appellant Mary Cooper Falls Wing.*
>
> *Penry Riemann PLLC, by J. Anthony Penry, for plaintiff-appellant Ralph Falls, III.*
>
> *Mullins Duncan Harrell & Russell PLLC, by Allison Mullins, Alan W. Duncan, and Hillary M. Kies, for defendant-appellee Dianne C. Sellers.*
>
> *Ellis & Winters LLP, by Leslie C. Packer, Alex J. Hagan and Michelle A. Liguori, for defendant-appellees, Louise Falls Cone, Toby Cone, Gillian Falls Cone, and Katherine Lenox Cone.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Eva G. Frongello, James K. Dorsett, III, and J. Mitchell Armbruster for defendant-appellant Goldman Sachs Trust Company, N.A.*

TYSON, Judge.

## I. Background

Ralph Lane Falls Jr. ("Decedent") died on 11 May 2015 at the age of seventy-four. Decedent was survived by his wife, Dianne C. Sellers ("Sellers"), and his three adult children from his first marriage, daughter Mary Cooper Falls Wing ("Wing"), son, Ralph Lane Falls III (Falls III), and daughter, Louise Falls Cone ("Cone"). Decedent is also survived by Falls III's three children and by Cone's two children and her husband. Goldman Sachs Trust Company ("Goldman Sachs") is the acting trustee of Decedent's trust ("Trust").

Decedent created a revocable Trust as trustor in August 2011. Decedent signed as both grantor and trustee in the Trust instrument. Wells Fargo Bank, N.A. was designated as the successor trustee. Wing, her brother, Falls III, and two of his children were named and designated as the beneficiaries of 90% of the Trust's assets. The Trust allocated 40% of the *res* upon Decedent's death to Wing, 40% to Falls III, and 5% each to two of Falls III's children. Cone's two children were to receive 5% each, to equal 100% of the *res* ("Original Beneficiaries"). Decedent's other daughter,

Louise Cone, her husband, and Sellers were not designated as beneficiaries nor listed to receive any distributions of assets or income from the Trust.

Decedent executed his September 2012 will, prepared by a different attorney from the Trust's drafter, one month prior to scheduled surgery to remove three brain tumors. Decedent's September 2012 will named and appointed Falls III as trustee "of each trust," and Wing as his successor trustee. Decedent repeatedly acknowledged his desire for his property to be divided equally between his three children, Wing, Falls III, and Cone.

Decedent underwent brain surgery in October 2012. After surgery, he began to suffer a series of serious physical and mental health problems, resulting in recurring hospitalization and rehabilitative care. For the remainder of his life, Decedent relapsed into heavy drinking, experienced depression, manic episodes, and complications with bipolar disorder.

After removal of the brain tumors and beginning in December 2012 until 10 December 2014, Decedent intermittently executed six amendments ("purported amendments") to the 2011 Trust.

The first amendment in December 2012 added Sellers as successor trustee and Falls III as her successor trustee. Falls III's share was reduced to 30%, Wing's share was eliminated to 0%, Cone was named as a beneficiary of 30%, and the four previously named grandchildren's shares were increased to 10% each.

The second amendment in January 2013 left Sellers as the first successor trustee. Successor trustee duties were given to Falls III on behalf of his children, and to Cone and her husband as subsequent successor trustees on behalf of their children. Falls III and Cone were named to receive 30% each, Wing's share remained at 0%, and the four grandchildren's shares remained at 10% each.

The third amendment in January 2014 named Goldman Sachs as successor trustee. Falls III's and Cone's shares were reduced to 20% each, and each of the four grandchildren's shares was increased to 15%.

In February 2014, the Trust was amended again. Goldman Sachs remained successor trustee, and Sellers and Cone were added as successor trustees after Goldman Sachs. Goldman Sachs was given discretionary power to distribute to Cone, her husband and to Sellers. Cone's share increased to 35% with her husband, Cone's two daughters' share increased to 20% each, Sellers was given 25%. Wing, Falls III, and his children are not mentioned in this amendment.

The Trust was again amended in July 2014. This amendment continued Goldman Sachs' discretionary distributions to Sellers and Cone, and Sellers and Cone were given the power to remove Goldman Sachs as trustee.

The sixth and final amendment, entitled the "Fifth Amendment" was executed on 10 December 2014. That same day, Sellers and Decedent applied for a marriage license and were married. This amendment gave 25% to Sellers, now as Decedent's

wife, 35% to Cone and her husband, and 20% each to Cone's two children. An entire section benefits Sellers as a surviving spouse. Cone and her husband are designated to take Sellers' 25%, should Sellers predecease Decedent. Wing, Falls III, and his children are not mentioned in the document.

These amendments did not revoke the Trust nor create a new trust, and each amendment affirmatively restated and reaffirmed all terms and provisions of the Trust, not expressly amended.

Decedent died on 11 May 2015. On 12 June 2015, Goldman Sachs paid distributions from the Trust to Sellers and Cone pursuant to the Trust's Fifth Amendment. In 2016, Wing and Falls III filed claims and challenged the validity of the purported amendments and gave Goldman Sachs notice of their claims. Goldman Sachs continued making distributions, despite being on notice the amendments were challenged and that Sellers and Cone were not named beneficiaries under the original Trust.

Sellers and Cone filed a Joint Motion to Pay Defense Cost ("Motion to Pay") to direct Goldman Sachs to pay the cost of "defending the Trust as amended" on 6 February 2019. Wing filed an amended Motion to Freeze Administration of Revocable Trust until Beneficiaries are Determined or, alternatively, to Pay Defense Costs for ALL Purported Beneficiaries ("Motion to Freeze"). Goldman Sachs did not independently seek instructions on whether to make distributions to any of the

purported claimants or seek an interpleader action for the Trust *res*. *See* N.C. Gen. Stat. § 1A-1, Rule 22(a) (2019) (Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims expose or may expose the plaintiff to double or multiple liability . . . . A defendant exposed to similar liability may obtain such interpleader by way of crossclaim or counterclaim.).

The trial court granted Defendant's Motion to Pay and denied Wing's Motion to Freeze on 20 May 2019. The order does not contain a Rule 54(b) certification that the order is immediately appealable. *See* N.C. R. App. P. 54(b). Plaintiff timely appealed from the superior court's order.

## II. Interlocutory Jurisdiction

Wing argues this Court possesses jurisdiction over this interlocutory appeal pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b)(3) (2019).

> Ordinarily, an appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment . . . Essentially a two-part test has developed[:] the right itself must be substantial and the deprivation of that substantial right must potentially work injury to plaintiff if not corrected before appeal from final judgment.

*Goldston v. American Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (citations and internal quotation marks omitted).

> Admittedly the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied. It is usually necessary to resolve the question in each case by

considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.

*Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

On a purported appeal from an interlocutory order without the trial court's Rule 54(b) certification, "the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (citations omitted).

Wing asserts the trial court's order deprived her of substantial rights in two ways: (1) it depletes the Trust *res* and mandates the immediate payment of a substantial amount of money; and, (2) it risks inconsistent verdicts or outcomes with the ultimate disposition of the wrongful distribution claim and on any potential recovery against Goldman Sachs for funds already distributed.

## A. Substantial Right Affected

The first part of the interlocutory test is the right affected must be substantial. Goldman Sachs has distributed more than $2 million dollars from the Trust to Sellers and Cone for expenses and legal fees they incurred in opposing Wing's and Falls III's claims. In 2016, Wing and Falls III filed suit and distributions ceased in November 2017. The record before us is unclear whether Goldman Sachs resumed distributions to Sellers and Cone for their legal fees or otherwise after November 2017. Counsel

for Goldman Sachs assert they have not been paid for defending the Trust since November 2017.

This Court has held:

> Remaining claims would jeopardize plaintiff's substantial right not only because it orders plaintiff to pay a not insignificant amount—$48,188.15—The Order appealed affects a substantial right . . . by ordering [Defendant] to make immediate payment of a significant amount of money; therefore this Court has jurisdiction over the Defendant's appeal pursuant to N.C. Gen. Stat. 1-277.

*Beasley v. Beasley*, 259 N.C. App. 735, 742, 816 S.E.2d 866, 872-873, (2018) (alterations, citations, and internal quotations omitted.)

As this Court stated in *Beasley*, Goldman Sachs has paid out far more than an "insignificant amount" in Trust funds for Sellers' and Cone's legal fees. The disbursements for legal fees and expenses already surpass $2 million dollars, more than forty times the amount this Court referenced in *Beasley* as "a not insignificant amount." *Id*.

Secondly, a ruling "purporting to determine who is entitled to money" affects a substantial right. *State ex rel. Comm'r of Insurance v. N. C. Rate Bureau*, 102 N.C. App. 809, 811, 403 S.E.2d 597, 599 (1991). In *Rate Bureau*, the Commissioner of Insurance failed to order the release of funds placed in escrow pending judicial review. "The Commissioner's order only determine[d] that the funds are not to be released now." *Id*. The Commissioner had placed a temporary freeze on the

distribution of funds while the proper recipients were determined. As the freeze was temporary, this Court determined no injury had occurred. *Id.*

The opposite result occurred here. Wing's Motion to Freeze, if allowed, would have had the same temporary impact as the Commissioner's freeze in *Rate Bureau*. "The Commissioner's order does not purport to determine who is entitled to the money. For these reasons, we hold that the appeal is interlocutory." *Id.*

Unlike *Rate Bureau*, Goldman Sachs, as purported trustee, held Trust funds whose beneficiaries are in dispute, but nonetheless distributed funds to one group, while the Trust beneficiaries' case is pending. Wing contends she, Falls III, and his children are the proper beneficiaries of the Trust under the operative trust terms set forth in the 2011 Trust Agreement. If Wing and Falls III succeed in their challenges to the amendments to the Trust, the court's ruling on Defendants' Motion to Pay adversely affects their equitable interests in the disbursed and depleted assets of the Trust.

Wing also relies upon this Court's precedents in *Tanner v. Tanner*, 248 N.C. App. 828, 789 S.E.2d 888 (2016) and *Estate of Redden v. Redden*, 179 N.C. App. 113, 632 S.E. 2d 794 (2006). In *Tanner*, the plaintiff-husband moved $300,000 from his business account to his mother's bank account and separated from his wife two months later. *Tanner*, 248 N.C. App. at 829, 789 S.E.2d at 889. The defendant-wife alleged the plaintiff had anticipated the marital separation and the money

distributed was marital property, properly included in equitable distribution. *Id.*

This Court applied the two-part test for an immediate appeal of an interlocutory ruling to determine if the mother-appellant's substantial rights were affected by the defendant's claim of substantial money for which appellant had ownership and control. *Id.* at 831, 789 S.E.2d at 890. The mother-appellant asserted her grounds for appellate review, quoting *Redden*: "The order appealed affects a substantial right of [mother-appellant] by ordering her to make immediate payment of a significant amount of money; therefore, this Court has jurisdiction over [mother-appellant's] appeal pursuant to N.C. Gen. Stat. § 1-277." *Tanner*, 248 N.C. App. at 831, 789 S.E.2d at 891 (citation omitted).

In *Redden*, decedent had executed a power of attorney in favor of his wife. He also designated his wife as the payable-on-death beneficiary of funds in a specific bank account. *Redden*, 179 N.C. App. at 114, 632 S.E.2d at 796. The wife testified decedent had instructed her to move $200,000 from the specific account to decedent's work account so she could proceed with office work on decedent's behalf. After the decedent died, his wife moved the remaining money she had transferred to the work account, back to her specific bank account. *Id.* at 115, 632 S.E.2d at 796. The plaintiff sued the wife on behalf of Redden's estate for conversion. The trial court granted partial summary judgment in favor of the plaintiff, and the wife appealed to this Court. *Id.* at 114, 632 S.E.2d at 797.

In both *Tanner* and *Redden,* this Court held a substantial right is affected when a payment is made or required and ownership of the funds is in dispute. *See Tanner,* 248 N.C. App at 831, 789 S.E.2d 890-91. Like *Tanner* and *Redden*, Wing also contests the payment of Trust funds over which there is a dispute to the rightful owners.

Defendants and Goldman Sachs rely upon workers' compensation and other two-party, duty-to-pay cases to argue no substantial right exists to an immediate appeal. This Court has consistently held in interlocutory appeals of workers' compensation and contract disputes "when a party has been required to make payments *pendente lite*, this Court has nonetheless held that no substantial right exists to justify an interlocutory appeal." *Perry v. N.C. Dep't of Corr.,* 176 N.C. App. 123, 130, 625 S.E.2d 790, 795 (2006). This is not a workers' compensation or a two-party, duty-to-pay case.

Defendants and Goldman Sachs rely on *Miller v. Henderson*, 71 N.C. App. 366, 368, 322 S.E.2d 594, 596 (1984) (allowing plaintiff to bring an interlocutory appeal because plaintiff faced a possibility of inconsistent verdicts and a partial summary judgment for a monetary sum, plaintiff's claim was dismissed as meritless and she was ordered to pay attorney fees). Our Supreme Court permitted the interlocutory appeal in *Miller* using the exact same reasoning Wing asserts in this case. The outcome of *Miller* required the plaintiff to pay attorney's fees because the statute

required them to do so after allegations were found to be meritless. *Id.* at 372, 322 S.E.2d at 598. For our interlocutory analysis, *Miller* supports Wing's assertion, but the ultimate conclusion in *Miller* regarding plaintiff's duty to pay is easily distinguished from our facts. *Id.*

Goldman Sachs heavily relies on *Perry*, a workers' compensation case. In *Perry*, plaintiff-employee was injured, and defendant-employer paid the employee for a term, and then unilaterally ceased payment. *Perry,* 176 N.C. App. 123, 625 S.E.2d 790. Defendant was ordered to reinstate workers' compensation benefits to plaintiff, and defendant appealed with a motion to stay the payment order. The motion was denied. Defendant appealed to this Court for an interlocutory appeal asserting a substantial right. *Id.* at 127, 625 S.E.2d at 793. This Court stated: "an order denying a stay is an interlocutory order not subject to immediate appeal." *Id.* at 129, 625 S.E.2d at 794.

The ruling in *Perry* is inapplicable to the order before us. Wing and Falls III are not appealing from a motion to stay, but rather from an order affirmatively ordering payments by a trustee with distributions from a trust to some purported beneficiaries, and not others, when the rightful beneficiaries are disputed. This Court reasoned in *Perry* that workers' compensation cases create unique issues:

> These same circumstances arise in almost every case in which a workers' compensation defendant fails to prevail in connection with [a] request to terminate benefits. To allow a defendant to take an interlocutory appeal from any

requirement that it continue to pay benefits pending Commission proceedings would result in precisely the yo-yo procedure, up and down, up and down, which this Court has held works to defeat the very purpose of the Workers' Compensation Act.

*Id*. at 130, 625 S.E.2d at 794. (alterations in original) (quotation marks omitted).

Finally, this Court noted: "When an employer meets the requirements of N.C. Gen. Stat. § 97-42 (2005), it may receive a credit for overpayments." *Perry,* 176 N.C. App. at 131, 625 S.E.2d at 795 (citation omitted). This available alterative is distinguished here, as Goldman Sachs claims it has no liability from distributing funds. If Wing prevails on her claims of wrongful distribution, no return of funds or credit to offset future payments is guaranteed. *Perry* and *Miller* differ substantially from the facts before us.

Further, in cases involving escrow, like *Rate Bureau*, cases involving constructive trust, like *Tanner,* or cases involving disputed distributions, like *Redden*, this Court has consistently held a substantial right is affected when the dispute is between claims of competing owners of funds to be distributed. Two million dollars was distributed from the Trust to Sellers and Cone, who may be held to be non-beneficiaries in the pending litigation. The order allowing Defendant's Motion to Pay diverts funds from the Trust, which would otherwise be held in the Trust and recoverable by the Wing, Falls III, and two of his children, if they prevail.

B. Deprivation Works Injury

- 13 -

The second part of the test for interlocutory appeals is whether the deprivation immediate appellate review works injury to the appellant. "[W]e may generally state that so long as a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right *if* there are overlapping factual issues between the claim determined and any claims which have not yet been determined." *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 26, 376 S.E.2d 488, 492 (1989).

Issues overlap whenever "the facts relevant to the resolution overlap in such a way as to create a risk that separate litigation of those issues might result in inconsistent verdicts." *Wells Fargo Bank, N.A. v. Corneal*, 238 N.C. App. 192, 194, 767 S.E.2d 374, 376 (2014). The overlapping issues will work injury as inconsistent verdicts could deprive Wing and Falls III of their equitable interest in the Trust.

The wrongful distribution claim, along with all the pending claims, hinge upon undue influence and Decedent's capacity to execute the purported amendments. If Decedent lacked capacity to execute any or all amendments to the Trust, the purported amendments, together or singularly, are void; Sellers and Cone take nothing from the Trust, and Goldman Sachs breached their fiduciary duties to preserve the Trust *res*. The order allowing the Motion to Pay and the pending claims overlap substantially.

The rightful beneficiaries of the Trust are in dispute. Wing's and Falls III's

substantial rights are affected by the large sums being distributed from the Trust. Further, the court's order does not clearly define the liability of Goldman Sachs. This creates the possibility of multiple trials on claims involving overlapping issues and could result in inconsistent verdicts. Immediate appeal to and review by this Court is proper, as this interlocutory order affects Plaintiffs' substantial rights. We allow Plaintiffs' interlocutory appeal.

### III. Trustee's Duty to the Trust

### A. Interpreting Trust Terms

"The rules of construction that apply in this State to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." N.C. Gen. Stat. § 36C-1-112 (2019). A caveat proceeding determines whether the writing purporting to be a testamentary will or a codicil thereto is in fact the last will and testament of the decedent. *See In re Spinks*, 7 N.C. App. 417, 423, 173 S.E.2d 1, 5 (1970). If "a caveat is filed the clerk of the superior court shall forthwith issue an order that shall apply during the pendency of the caveat to any personal representative, having the estate in charge, as follows: (1) . . . *[T]here shall be no distributions of assets of the estate to any beneficiary.*" N.C. Gen. Stat. § 31-36 (2019) (emphasis supplied).

Our general statutes compel us to interpret wills' and trusts' provisions and dispositions consistently. N.C. Gen. Stat. § 36C-1-112 (2019). N.C. Gen. Stat. § 31-

36(a)(1) provides the framework for the case before us. Plaintiff's' challenge of the purported amendments is comparable to a caveat to determine who the rightful beneficiaries should be. The plain text of the statute directs the clerk of the superior court to order the executor or administrator to freeze all distributions until the caveat is resolved.

Wing filed a will caveat in the superior court on 13 November 2017. Wing also challenged the probated will on the basis of Decedent's incapacity and Seller's purported undue influence. Upon filing her caveat, "any personal representative, having the estate in charge . . . *shall [make] no distributions of assets of the estate to any beneficiary.*" N.C. Gen. Stat. § 31-36(a)(1) (emphasis supplied).

### B. Duty of Neutrality

In August 2011, Decedent created the Trust and thereafter purportedly amended the trust six times in less than two years between 2012 and 2014 after having undergone surgery for multiple brain tumors. Decedent wrote, "This amendment amends and restates in its entirety the trust originally executed by me on August 4, 2011." This phrase is found at the top of each purported amendment, incorporating the Trust as purportedly amended.

Goldman Sachs argues a trustee has a duty to defend the Trust. The first issue is whether a trustee has a duty to defend the purported amendments during pending litigation between purported beneficiaries. Wing and Falls III are not challenging

the underlying validity of the Trust. They are challenging the trustor's capacity to execute the amendments thereto and to determine the rightful beneficiaries of their father's Trust.

Aside from the guidance and mandates of N.C. Gen. Stat. §§ 31-36 and 36C-1-112, the trustee's duty of and liability for distribution to disputed beneficiaries during pending litigation is an issue of first impression in North Carolina. Other jurisdictions have considered similar factual scenarios.

In *Terry v. Conlan*, the trustor's children challenged their stepmother regarding the validity of trust amendments. *Terry*, 33 Cal. Rptr. 3d 603 (Cal. Ct. App. 2005). The California Court of Appeals concluded, "The dispute between [Stepmother] and the Children is over the validity of the various trust instruments and amendments . . . The trust remains intact, leaving the parties in their original positions prior to the beginning of litigation." *Id.* at 616. The court in *Terry* held, "[B]ecause the dispute between the parties was related to the benefits of the trust, rather than an attack on the validity of the trust itself, there was no basis for the trustee to have taken other than a neutral position in the contest." *Id.* at 615.

In another case with similar facts to Wing, the decedent and his wife created a trust which named their niece, Whittlesey, as the trustee and primary beneficiary. *Whittlesey v. Aiello*, 128 Cal. Rptr. 2d 742, 743 (Cal. Ct. App. 2002). The wife died, and decedent remarried and amended the trust to make his second wife and her son

the primary beneficiaries of the trust. *Id*. Whittlesey challenged the validity of the amendment and opposing attorney's claim he should be paid from the trust. The amendment was determined to be void due to undue influence, and the attorney's fees incurred during litigation were denied *Id*. at 744.

The California Court of Appeals held: "Where the trust is not benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets." *Id*. at 748. The court further ruled, "The essence of the underlying action was not a challenge to the existence of the trust, it was a dispute over who would control and benefit from it. Whether or not the contest prevailed, the trust would remain intact." *Id*. at 746. The court reasoned the dispute was to determine who was the rightful taker, so the trust would not be affected negatively, and thus the trustee did not have a duty to take either position. *Id*. at. 748.

The court's reasoning is persuasive: "[A]n award of fees to [attorney defending second wife] from the trust would be, in effect, an award from Whittlesey . . . Whittlesey would be required to finance her own trust litigation and that of her opponent, despite the fact she prevailed. There can be no equity in that." *Id*. (internal quotations omitted).

Wing's position is similar to *Whittlesey*. Goldman Sachs asserts attorney's fees are "costs of administration" and a valid expense if incurred by the trustee while

defending the Trust. *See Phillips v. Phillips*, 296 N.C. 590, 603, 252 S.E.2d 761, 769 (1979). The Trust does not need defending in the case before us because there is no contest to the validity of the Trust. This dispute is between the rightful beneficiaries, and the Trust is not in peril. Goldman Sachs has breached their duty of neutrality by deciding who the rightful beneficiaries are before pending litigation has resolved that issue.

Many other states have also held a trustee has a duty to remain neutral regarding competing claims between putative beneficiaries. *See In re Duke*, 305 N.J. Super. 408, 440, 702 A.2d 1008, 1023-24 (Ch. Div. 1995) (holding in a dispute between two parties claiming to be beneficiaries, a trustee may not advocate for either side or assume the validity of either side's position."); *Dueck v. Clifton Club Co.*, 2017-Ohio-7161, 95 N.E.3d 1032, 1059 (Ohio Ct. App. 2017) (holding a trustee "breached the duty of impartiality by engaging in advocacy between the beneficiaries"); *In re Connell Living Trust*, 393 P.3d 1090, 1094 (Nev. 2017) (holding a trustee breached fiduciary duties by advocating for a position which benefitted some putative beneficiaries but not others); *Hershatter v. Colonial Trust Co.,* 73 A.2d 97, 101 (Conn. 1950) ("[W]here an attack is being made upon the validity of a trust, the trustee has the duty of participating actively in its defense . . .[but where] he acts . . . merely as a defendant stakeholder, he ordinarily has neither duty nor right to so participate"). We have found no cases arising on similar context and facts, which reach a contrary

result.

IV. <u>Conclusion</u>

"A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust." N.C. Gen. Stat. § 36C-8-804 (2019). A prudent trustee must act impartially towards all purported beneficiaries. N.C. Gen. Stat. § 36C-8-803 (2019). Here, the Trust does not require defending, rather, as purported beneficiaries, Defendants seek to use Trust assets to maintain their positions. The trustee is not required to pay attorney fees or legal costs unless the *res* of the Trust is in peril. *See Whittlesey,* 128 Cal. Rptr. 2d at 743.

Wing's substantial rights are affected by the large sums distributed to competing beneficiaries, which could belong to Wing, Falls III and his children with potentially no way to recover the wrongful payments. The Motion to Pay order creates the possibility of multiple trials on claims involving overlapping issues, which might result in inconsistent verdicts. Immediate appeal of this interlocutory order to this Court is proper.

The beneficiaries of the Trust are in dispute. There is no final determination of who are the rightful beneficiaries. In accordance with the general statutes and precedents, the trial court should have allowed Plaintiff's motion and ordered a freeze on distributions of the Trust assets until resolution of the competing claims.

The trial court erred by not freezing and by ordering distributions from the Trust to some putative beneficiaries but not others during pending litigation. We reverse the Motion to Pay order and remand to the trial court for entry of an order allowing Wing's Motion to Freeze. All remaining claims, rights, and defenses are undisturbed. *It is so ordered.*

REVERSED AND REMANDED.

Chief Judge McGEE and Judge COLLINS concur.