In re Estate of Edwards

---

IN THE MATTER OF THE ESTATE OF VIRGINIA DUNCAN EDWARDS,
DECEASED

No. 8514SC177

(Filed 15 October 1985)

**Descent and Distribution § 5; Wills § 61— natural children of deceased—adoption
during second marriage—lineal descendants of second marriage—effect on sec-
ond spouse's dissent**

  Natural children of a deceased spouse who were born during a first mar-
riage but adopted by deceased's second spouse during the second marriage are
lineal descendants by the second marriage within the meaning of G.S. 30-3(b)
so that the dissenting second spouse is entitled to a greater share of
deceased's estate under that statute.

  Judge JOHNSON dissenting.

APPEAL by respondents from *Farmer, Judge*. Judgment en-
tered 5 November 1984 in Superior Court, DURHAM County.
Heard in the Court of Appeals 25 September 1985.

  This case involves a surviving second spouse's dissent from a
will. From judgment in favor of petitioner dissenting spouse, re-
spondent executors appeal.

  *W. Y. Manson and Samuel Roberti for petitioner-appellee.*

  *Nye & Mitchell, by R. Roy Mitchell, Jr., and Edmund D.
Milam, Jr., for respondent-appellants.*

EAGLES, Judge.

  This case presents a single question of first impression: Are
natural children of one spouse born during a previous marriage, if
adopted by a second spouse with consent of their surviving natu-
ral parent, considered lineal descendants by the second marriage
for purposes of G.S. 30-3(b) which determines a dissenting
spouse's share?

I

  Virginia Duncan Edwards, deceased, had five children by her
first marriage, which ended with the death of her first husband.
She married Daniel K. Edwards (petitioner) in 1968. In 1970, when
three of the five children had reached their majority, petitioner,

with the consent of the deceased pursuant to G.S. 48-7(d), adopted the two minor children. Final orders of adoption were duly entered in Superior Court, Durham County. Deceased died in 1983. Her probate estate totalled approximately $1.6 million; her will made no provision for petitioner. In apt time, petitioner dissented. Controversy arose over whether petitioner was entitled to one-third of the estate pursuant to G.S. 30-3(a) or only one-sixth pursuant to G.S. 30-3(b). From orders of the Clerk of Superior Court and the Superior Court in favor of petitioner, respondent executors appeal.

## II

A surviving spouse enjoys a general statutory right to dissent from the deceased spouse's will. G.S. 30-1; *Vinson v. Chappell*, 275 N.C. 234, 166 S.E. 2d 686 (1969). A dissenting spouse takes the same share he or she would have taken if their deceased spouse had died intestate. G.S. 30-3(a). For surviving *second* spouses, this right is modified by G.S. 30-3(b):

> Whenever the surviving spouse is a second or successive spouse, he or she shall take only one half of the amount provided by the Intestate Succession Act for the surviving spouse if the testator has surviving him lineal descendants by a former marriage but there are no lineal descendants surviving him by the second or successive marriage.

While the legislative purpose of this provision is not entirely clear, *Vinson v. Chappell, supra*, it was apparently "passed to protect a testator's children by a former marriage against a 'fortune-hunting' second or successive spouse." *Phillips v. Phillips*, 296 N.C. 590, 606, 252 S.E. 2d 761, 771 (1979).

Petitioner contends that by virtue of the adoption of the two minors by himself and his deceased spouse (their natural mother), they became the lineal descendants of both parents as of the time of adoption. Respondents contend that petitioner's adoption, to which deceased merely consented, could not affect her relationship with her own children, who remained her children by her first marriage. By petitioner's construction he is entitled to a full one-third share, G.S. 29-14(a)(2), 29-14(b)(2), while under respondents' construction that share would be only one-sixth.

This appears to be a question of first impression generally. Our research discloses only two other states with statutes similar to G.S. 30-3(b), *see* Ind. Code Ann. Section 29-1-3-1 (Burns Supp. 1985); Wyo. Stat. Section 2-5-101 (1977) and there are few reported decisions. We have found no reported decision addressing this particular problem.

### III

We turn first to the language of G.S. 30-3(b) itself, noting preliminarily that participation in the estate of a deceased person is by legislative grace, since only the State enjoys any natural or inherent right to succession. *Vinson v. Chappell, supra; In re Morris Estate*, 138 N.C. 259, 50 S.E. 682 (1905). Accordingly, there is no presumption in favor of the will or against the right of a spouse to dissent. The statute applies to reduce petitioner's share (1) if there are lineal descendants of deceased by the first marriage (here there are clearly at least three) and (2) there are "no lineal descendants surviving [deceased] by the second . . . marriage." The term "lineal descendants" is not defined in Chapter 30 of the General Statutes, but is defined at G.S. 29-2(4) as "all children of such person." This would include even illegitimate children of a deceased female, G.S. 29-19(a), and clearly includes adopted children. G.S. 29-17. The phrase "lineal descendants" generally applies not to distinguish between children of various marriages or out of wedlock but to distinguish children from other collateral descendants, *e.g.* nieces and nephews. *See* 26A C.J.S. Descent & Distribution, Section 27 (1956). The two minors were their deceased mother's lineal descendants. The real question is whether they were lineal descendants of their mother and adoptive father "by the second marriage."

### IV

In deciding this question we must consider the effect of the adoption. Like the right to dissent, adoption did not exist at common law and is entirely statutory in nature. *See In re Daughtridge*, 25 N.C. App. 141, 212 S.E. 2d 519 (1975); 2 Am. Jur. 2d, Adoption, Section 2 (1962). Petitioner here was the sole petitioner in the 1970 adoption proceedings; his deceased spouse (the children's natural mother) consented to but did not join in the petition. "When a stepparent [petitioner] petitions to adopt a stepchild, consent to the adoption must be given by the spouse of the

petitioner [deceased], and this adoption shall not affect the relationship of parent and child between such spouse and the child." G.S. 48-7(d). This language, on its face, would seem to indicate that the relationship of the children to their mother, as her children by the first marriage, did not change.

We must also consider G.S. 48-23, however. When originally adopted, at the same time as G.S. 48-7(d), it provided:

> Effect of final order. The final order forthwith shall establish the relationship of parent and child between the petitioners and the child, and, from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property from the adoptive parents in accordance with the statutes of descent and distribution.

1949 N.C. Sess. Laws c. 300, s. 1. This section was considered in *Bradford v. Johnson*, 237 N.C. 572, 75 S.E. 2d 632 (1953). Applying principles of will construction, the court held that regardless of the parent-child relationship established by the statute, the adoptive child did not become "a lawfully begotten heir of the bodies" of the adoptive parents. *Id.* at 581, 75 S.E. 2d at 638.

Shortly thereafter, the General Assembly adopted the current provisions of G.S. 48-23(1):

> The final order forthwith shall establish the relationship of parent and child between the petitioners and child, and, from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property by, through, and from the adoptive parents in accordance with the statutes of descent and distribution. An adopted child shall have the same legal status, including all legal rights and obligations of any kind whatsoever, as he would have had if he were born the legitimate child of the adoptive parent or parents at the date of the signing of the final order of adoption, except that the age of the child shall be computed from the date of his actual birth.

1955 N.C. Sess. Laws c. 813, s. 5, *codified at* G.S. 48-23(1). (The 1963 amendment, 1963 N.C. Sess. Laws c. 967, s. 1, did not change these provisions except to replace the words "of descent and distribution" with the term "relating to intestate succession.") With *Bradford* recently decided, the General Assembly's enact-

ment appears to have intended (1) to establish unequivocally the legal equality of adopted children with their natural siblings and (2) to provide a single, easily applied test to determine their legal rights. As summarized in a comment:

> Here is a simple and clear rule which eliminates all doubt as to the standing and rights of an adopted child. For all legal purposes he is in the same position as if he had been born to his adoptive parents at the time of the adoption. There is no need for any learned and complicated interpretations. Whatever the problem is concerning an adopted child, his standing and his legal rights can be measured by this clear test: "What would his standing and his rights be if he had been born to his adoptive parents at the time of the adoption?"

A Survey of Statutory Changes in North Carolina in 1955, 33 N.C. L. Rev. 513, 522 (1955), *quoted with approval Crumpton v. Mitchell*, 303 N.C. 657, 663, 281 S.E. 2d 1, 5 (1981) (adoption affects "complete substitution" of new family for old). The 1963 amendment, which added that the statute would so affect *every* final order of adoption, reinforces this reading of the amended statute. 1963 N.C. Sess. Laws c. 967, s. 1.

We interpret the language of G.S. 48-7(d), that adoption by a stepparent does not affect the parent-child relation with the natural parent, as a measure to protect that parent-child relationship from the otherwise sweeping effects of G.S. 48-23(1), which otherwise might be construed to terminate the natural parent-child relationship. We note that *Bradford v. Johnson, supra*, decided before the enactment of the present G.S. 48-23(1), stands for the proposition that there is some difference between parent and child and deceased and heir.

Applying G.S. 48-23(1) to the facts of this case, we hold that the two children adopted must be treated *legally* as having been born at the time of the order of adoption in 1970. At that time their mother, the deceased spouse here, was not unmarried but was married to petitioner. Accordingly, the children were as a matter of law born of the second marriage, and are "lineal descendants by the second marriage" within the intended meaning of G.S. 30-3(b).

V

This result is consistent with legislative policy concerning both adoptions and their effect and the rights and obligations of surviving spouses. We are aware that petitioner will be now able to obtain a greater share of the estate, though he was not named in the will. However, we recall that the deceased's power to effectuate a testamentary disposition of her property comes from the statutes and the same statutes establish the surviving spouse's right to claim a share of the estate regardless of testamentary intent. Had deceased wished to avoid this result, she could have withheld her consent to the adoption. Her children would have still been fully legitimate, and apparently could have been cared for adequately from her resources. By adopting the children, petitioner assumed a duty to support them. The adopted children acquired *gratis* whatever rights and property might arise directly upon their adoptive father's death or might devolve to them from him through their mother. We note in passing that at the time of the adoption the adopted children were of tender years, 4 and 6 respectively, and stood to benefit in intangible ways from the guidance of a caring father who would have retained the responsibility to rear them if their mother had died during their minority. While there is substantial wealth involved here, the adoptive father's obligation to bring up young children and to be responsible for them during their minority is a major undertaking in any family situation without regard for wealth or station.

VI

Respondents argue that our interpretation of the statutes incongruously results in a situation where the natural parent adopts her own legitimate children by merely consenting to their adoption by the stepparent. For the limited purposes of determining a dissenting spouse's share pursuant to G.S. 30-3(b), this may be true. Nevertheless, we believe that the result we reach correctly reflects the legislative intent. As Justice (later Chief Justice) Bobbitt observed in 1969 in *Vinson v. Chappell, supra,* the statutes in question contain the "seeds of inequities" and could be clarified or modified, but that is a matter for the legislature. The legislature has not acted with respect to G.S. 30-3 since that decision. While we have found no North Carolina cases on point, we note that courts of other states have allowed natural

parents to adopt their own natural children even when the legal relationship was not affected. *See Petition of Curran*, 314 Mass. 91, 49 N.E. 2d 432 (1943) (single mother adopted own child); *McDonald v. Hester*, 115 Ga. App. 740, 155 S.E. 2d 720 (1967) (mother allowed to adopt own child with stepfather); *but see In re Graham*, 63 Ohio Misc. 22, 409 N.E. 2d 1067 (C.P. 1980) (divorced mother could not adopt own children since that would terminate father's duty owed to state to provide support). As we pointed out, the natural parent who wishes to avoid the result of this case can do so merely by failing to consent to the adoption.

## VII

Respondents filed a motion in this court on the day of argument seeking to amend an answer to a request for admissions originally filed in March 1984. Since we do not rely on the matter allegedly admitted in reaching our decision, the motion is irrelevant and is therefore denied.

## VIII

Based on the foregoing discussion, we conclude that the Superior Court correctly applied the law to the facts before it. Its order affirming the clerk's order is therefore

Affirmed.

Judge COZORT concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

I agree with respondent-appellants' argument that the focus of G.S. 30-3(b) is on the testatrix, not on the dissenting spouse. The testatrix was not a party to her dissenting spouse's adoption of two of her children; rather, she merely consented to it. While the adoption changed the dissenting spouse's status vis-a-vis the adopted children and theirs vis-a-vis him, it did not change the testatrix' status vis-a-vis the children or theirs vis-a-vis her. The adoption by the second spouse notwithstanding, both in fact and in law the adopted children remain lineal descendants surviving *the testatrix* by her first marriage, not by her second.

I therefore respectfully dissent. My vote is to reverse the judgment of the Superior Court which confirmed and adopted the judgment of the Clerk, and to remand to the Superior Court for further remand to the Clerk with instructions to enter a judgment decreeing that the dissenting spouse shall take only one-half of his statutory intestate share.