IN THE MATTER OF THE ESTATE OF VIRGINIA DUNCAN EDWARDS, DECEASED

No. 701A85

(Filed 3 June 1986)

**Descent and Distribution § 1.2; Adoption § 5— adopted children—lineal descendants of second marriage·**

> Two natural children of a testatrix, born of a previous marriage and adopted with the testatrix's consent by her second spouse, were considered lineal descendants of the second marriage for the purpose of determining the second spouse's distributive share upon his dissent from the testatrix's will pursuant to N.C.G.S. § 30-3(b). The failure of the biological parent to join in her second spouse's petition to adopt her children did not prevent the children from becoming lineal descendants of the second marriage because such a joinder is rendered unnecessary by carefully integrated statutory provisions; a new bloodline was created by law upon entry of the final order of adoption and the children became the lineal descendants of the biological parent and the adopted parent. There is no indication of legislative intent to create a special exception to the well-settled law and public policy that adopted children be afforded the same legal status as natural children born of that marriage, and the apparent intent in enacting N.C.G.S. § 30-3(b), to protect a testator's children by a former spouse against a fortune-hunting successive spouse, does not exist here because the second spouse caused himself to become legally bound to provide for the children. N.C.G.S. 48-4, N.C.G.S. 29-17(e), N.C.G.S. 48-7(d), N.C.G.S. 48-11(a), N.C.G.S. 29-2(4).

> Justice EXUM dissenting.

> Justices FRYE and BILLINGS join in the dissenting opinion.

FROM a decision of a divided panel of the Court of Appeals, 77 N.C. App. 302, 335 S.E. 2d 39 (1985), respondents appeal as a matter of right pursuant to N.C.G.S. § 7A-30. Heard in the Supreme Court 13 March 1986.

*W. Y. Manson and Samuel Roberti for petitioner-appellee.*

*Nye & Mitchell, by R. Roy Mitchell, Jr., and Edmund D. Milam, Jr., for respondent-appellants.*

MEYER, Justice.

We are presented on this appeal with a single question of first impression: whether two natural children of a testatrix, born of a previous marriage and adopted with her consent by her second spouse, are considered her lineal descendants by the second marriage for the purpose of determining the second spouse's distributive share upon his dissent from testatrix's will pursuant to N.C.G.S. § 30-3(b). The majority of the panel below answered this question in the affirmative, and we affirm.

Virginia Duncan Edwards (Virginia) died testate on 14 October 1983. She was survived by her husband, Daniel K. Edwards, and five children, all of whom had been born to her during her previous marriage to Harmon Duncan, deceased. From the date of their marriage in 1968 until Virginia's death in 1983, no natural children were born to Virginia and Daniel. However, in November 1970, Daniel adopted the two minor children of Virginia born to her during her marriage to Mr. Duncan. Daniel did not adopt his wife's three adult children from her previous marriage.

Virginia's will was admitted to probate, in common form, on 18 October 1983. Her will made no provision for her husband, Daniel. One week after Virginia's death, Daniel, the surviving spouse, filed his dissent from her will. The parties do not contest Daniel's right to dissent nor his timely notice of dissent. Only the matter of his distributive share is at issue here.

N.C.G.S. § 30-3, "Effect of dissent," provides in pertinent part:

> (b) Whenever the surviving spouse is a second or successive spouse, he or she shall take only one half of the amount provided by the Intestate Succession Act for the surviving spouse if the testator has surviving him lineal descendants by a former marriage but there are no lineal descendants surviving him by the second or successive marriage.

N.C.G.S. § 30-3(b) (1984).

If the two adopted children are considered to be lineal descendants of Virginia by the second marriage to Daniel, Daniel's distributive share of the personal property would be the same as that provided by the Intestate Succession Act (the first $15,000 plus one-third of the balance). N.C.G.S. §§ 29-14(b)(2), 30-3(a) (1984). If, instead, the adopted children are considered to be Virginia's lineal descendants by her first marriage, then Daniel's distributive share would be only one-half of the amount provided by the Intestate Succession Act (the first $7,500 plus one-sixth of the balance of the personal property). N.C.G.S. §§ 29-14(b)(2), 30-3(b).

On 30 April 1984, Daniel, petitioner, commenced this action by petition and motion to the Clerk of Superior Court, Durham County, to establish and define the proper distribution of Virginia's estate as a result of a disagreement that had arisen between himself and respondents, the co-executors of the estate. James Leo Carr, Durham County Clerk of Superior Court, entered judgment on 10 August 1984, finding, *inter alia*:

> 12. That G.S. § 30-3(b) does not apply to reduce the intestate share of Daniel K. Edwards because . . . [the two minor children] were lineal descendants by the successive marriage between Virginia D. Edwards and Daniel K. Edwards, and they survived and still survive their mother, Virginia D. Edwards, the testatrix, being lineal descendants because of their adoption by Daniel K. Edwards—said adoption being consented to by Virginia D. Edwards;

and ordering:

> IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED that under the provisions of G.S. § 30-3(a) and (b) Daniel K. Edwards, a successive spouse, by reason of his dissent is entitled to take the full intestate share of the estate of Virginia D. Edwards—that is, a one-third undivided interest in the real property left by the deceased and the first $15,000 plus one-third of the balance of the personal property left by the deceased; this being the share to which he is entitled and which vested in him by reason of the dissent and by reason of the fact that . . . [the two minor children] survived their

mother, the testatrix, and are lineal descendants to Daniel K. Edwards and Virginia D. Edwards.

Respondents appealed entry of this judgment to the Superior Court, Durham County. Judge Robert L. Farmer conducted a hearing in the matter and entered his judgment on 5 November 1984 in which he adopted the findings of the clerk of superior court, made additional findings, and "confirmed, approved and adopted" the 10 August 1984 judgment of the clerk. Respondents gave notice of appeal to the Court of Appeals. The majority of the panel below in turn affirmed the order of the superior court; Judge Johnson filed a dissenting opinion. We affirm the decision of the majority of the panel below.

N.C.G.S. § 30-3(b) provides that a second spouse who dissents from the will of his spouse, the testatrix, will take only one-half of his intestate share if "the testat[rix] has surviving [her] lineal descendants by a former marriage but there are no lineal descendants surviving [her] by the second . . . marriage." The Court construed this provision in *Vinson v. Chappell*, 275 N.C. 234, 166 S.E. 2d 686 (1969), in which former Chief Justice Bobbitt wrote:

> G.S. 30-3(b) applies only when these facts concur: (1) A married person, husband or wife, dies testate, survived by his (her) spouse. (2) The surviving spouse, being entitled under G.S. 30-1 to do so, dissents. (3) The surviving spouse is a "second or successive spouse." (4) No lineal descendants "by the second or successive marriage" survive the testator (testatrix). (5) The testator (testatrix) is survived by lineal descendants by his (her) former marriage.

*Id.* at 238, 166 S.E. 2d at 689-90 (emphasis omitted).

In the instant case (enumerating as in *Vinson*), the parties do not dispute that: (1) Virginia died testate, survived by her spouse, Daniel; (2) Daniel, being entitled to do so under N.C.G.S. § 30-1, filed a timely dissent; (3) Daniel is Virginia's second spouse; and (5) Virginia is survived by lineal descendants by her former marriage (at least the three adult children not adopted by Daniel). The parties are in sharp disagreement as to whether element (4) exists in this case.

Daniel contends that the two minor children born of Virginia's former marriage became her lineal descendants by her marriage

to him by virtue of the final order of adoption entered in 1970. Respondents argue that, although the final order of adoption changed *Daniel's* relationship with his wife's minor children from her former marriage, the adoption, to which Virginia "consented" but in which she did not "join," did not alter *her* relationship vis-a-vis her natural children who are, therefore, her lineal descendants by her *first* marriage. Respondents contend that N.C.G.S. § 30-3(b) focuses on whether the testatrix has lineal descendants surviving *her by* the second marriage, and not on whether the surviving spouse has lineal descendants surviving *him by* that marriage.

Respondents argue that because Virginia did not *join* in Daniel's petition to adopt the two minor children in 1970, the adoption was ineffective to alter the children's status as lineal descendants of her first marriage. As to Virginia, respondents argue, the minor children born during her marriage to Mr. Duncan have at all times remained among those lineal descendants described by element (5) of the *Vinson* test. As such, respondents contend, these children cannot *also* be lineal descendants of Virginia by her marriage to Daniel. Therefore, say respondents, there are no lineal descendants by her marriage to Daniel, thus satisfying the fourth *Vinson* element.

In support of this argument, respondents refer to N.C.G.S. § 48-7(d), which provides:

> When a stepparent petitions to adopt a stepchild, consent to the adoption must be given by the spouse of the petitioner, and this adoption shall not affect the relationship of parent and child between such spouse and the child.

N.C.G.S. § 48-7(d) (1984). Respondents construe this provision to mean that when the biological parent gives the statutorily required written consent to the adoption by her spouse of her children from a former marriage, the children remain "lineal descendants" of the biological parent by her former marriage. Respondents believe that only if the biological parent "joins" in her second spouse's petition to adopt her children could the status of the children as "lineal descendants" of the second marriage *possibly* arise *by* her marriage to the adoptive parent/spouse. This reasoning is flawed in several respects.

First, as Daniel points out, at the time that the adoption took place in 1970, with the consent of the biological mother, Virginia, there was no other recognized proceeding whereby her husband, Daniel, could adopt her natural children born of her previous marriage to Mr. Duncan. N.C.G.S. § 48-4, entitled, "Who may adopt children," provides in pertinent part:

> (a) Any person over 18 years of age may petition in a special proceeding in the superior court to adopt a minor child and may also petition for a change of the name of such child. *If the petitioner has a husband or wife living, competent to join in the petition, such spouse shall join in the petition.*

> (b) Provided, *however,* that *if the spouse* of the petitioner *is a biological parent* of the child to be adopted, such spouse *need not join* in the petition but *need only to give consent* as provided in G.S. 48-7(d).

N.C.G.S. § 48-4(a), (b) (1984) (emphasis added).

The use of the word "however" in subsection (b) indicates that the petitioner's spouse referred to in (a) who "shall join in the petition" is *not* the biological parent. This is because subsection (b) makes a specific provision for cases in which the petitioner's spouse is the biological parent of the child to be adopted. The ratified bill, later codified as N.C.G.S. § 48-4, as published in the 1949 Session Laws, indicates in the margin next to the text of subsection (b) that it is an "Exception," obviously to the immediately preceding provision, subsection (a). 1949 N.C. Sess. Laws ch. 300. Moreover, it has been suggested that the reason for requiring the joinder of the spouse of the petitioner is that "a child should not be brought into a home where it is unwanted by the husband or wife" of the petitioner. *A Survey of Statutory Changes in North Carolina in 1947,* 25 N.C. L. Rev. 376, 409 (1947). Such a reason clearly will not exist when the spouse of a petitioner is the child's biological parent who, by law, *must* consent to the adoption. N.C.G.S. § 48-7(a), (d) (1984). *See also* Fairley, *Inheritance Rights Consequent to Adoptions,* 29 N.C. L. Rev. 227, 237 (1951) ("[I]n the case of a stepparent . . . joinder of the natural parent is obviously unnecessary.").

Moreover, respondents have failed to point out a statutory provision in effect in 1970 which provided for the joinder of a biological parent in her spouse's petition to adopt the children of the parent's former marriage, nor have respondents offered a plausible reason for the parent's doing so when, as here, the children to be adopted were born *in* wedlock. Indeed, such joinder is also rendered unnecessary by other carefully integrated statutory provisions.

The general rules regarding the relationship between adopted children and their biological parents are found in Chapters 29 (Intestate Succession) and 48 (Adoptions). N.C.G.S. § 29-17(b) provides, "An adopted child is not entitled by succession to any property, by, through, or from his natural parents or their heirs except as provided in subsection (e) of this section." N.C.G.S. § 29-17(d) provides, "The natural parents and the heirs of the natural parents are not entitled by succession to any property, by, through or from an adopted child, except as provided in subsection (e) of this section." Thus, Chapter 29 provides that upon adoption, children are legally severed from their natural parents for all purposes of intestate succession. The exception referred to is found at N.C.G.S. § 29-17(e), which provides, "If a natural parent has previously married, is married to, or shall marry an adoptive parent, the adopted child is considered the child of such natural parent for all purposes of intestate succession." The purpose, therefore, of subsection (e) is to make it clear that, in a situation such as the one at bar, the relationship of parent and child is *not* severed when the child is adopted by the spouse of the biological parent.

Likewise, in Chapter 48, N.C.G.S. § 48-23(2) clearly restates the principle that adopted children are legally severed from their biological parents, and vice versa: "The biological parents of the person adopted, if living, shall, from and after the entry of the final order of adoption, be relieved of all legal duties and obligations due from them to the person adopted, and shall be divested of all rights with respect to such person." Again, however, special provision is made for adopted children whose biological parent is married to the adoptive parent. N.C.G.S. § 48-7(d) provides: "When a stepparent petitions to adopt a stepchild, consent to the adoption must be given by the spouse of the petitioner, and this

adoption shall not affect the relationship of parent and child between such spouse and the child."

Therefore, it becomes clear that N.C.G.S. §§ 29-17(e) and 48-7(d) were enacted, not, as respondents argue, to retain adopted children's status as "lineal descendants" by the former marriage, but instead to provide that the parent-child relationship between adopted children and their biological parent is *not* severed by the parent's spouse's adoption of her children from a former marriage. Since the relationship remains intact in this limited situation, it is not necessary for such a biological parent to become a co-petitioner in her husband's adoption of her legitimate children of a former marriage. This biological parent, however, must consent to the adoption, as must any biological parent who does not come within the ambit of N.C.G.S. § 48-6, "When consent of parents is not necessary."

Finally, N.C.G.S. § 48-11(a) provides in part that "[w]hen the consent of any person . . . is required under the provisions of this Chapter, the filing of such consent with the petition shall be sufficient to make the consenting person . . . *a party* of record to the proceeding . . . ." Thus, the apparent basis for Judge Johnson's dissent below ("testatrix was *not a party* to her dissenting spouse's adoption . . . ." *In re Edwards*, 77 N.C. App. 302, 308, 335 S.E. 2d 39, 44 (Johnson, J., dissenting) (emphasis added)) is without support in law.

Therefore, we hold that Virginia's failure to "join" in her husband's petition for the adoption of her two minor children in no way affects her relationship with the children and is immaterial to a determination of her husband's distributive share under N.C.G.S. § 30-3(d). Virginia did as much as she was directed to do by statute in order to effectuate the couple's apparent desire that Virginia, Daniel, and the two minor children would be a family, legally as well as emotionally.

Respondents further contend that the decisions of the clerk of superior court, the superior court, and the Court of Appeals erroneously focused on Daniel's relationship with his adopted children rather than on Virginia's relationship with her natural children. We believe that the focus of N.C.G.S. § 30-3(b) in the instant case is on the "lineal descendants" and not on either the testatrix or her second spouse. The question here is: From what

marriage (or bloodline) will these children of the testatrix be considered to have "descended"? The answer to this question would have been simple had Daniel not adopted the two minor children: The children would unquestionably have been considered lineal descendants of Virginia's first marriage— *Vinson* element (5) descendants. But because Daniel *did* adopt these children, the analysis is somewhat more complex.

When Virginia consented to her husband's adoption of her two minor children and the final order of adoption was filed, the children were removed from the "bloodline" which was created by the union of their natural mother and father. *See Crumpton v. Mitchell*, 303 N.C. 657, 665, 281 S.E. 2d 1, 6 (1981). No longer could these children, adopted out of the Duncan family, inherit through their natural father. Upon entry of the final order of adoption, a new bloodline was created by law as surely as it would have been created by nature had Virginia given birth to natural children of her union with her husband, Daniel. New birth certificates were required by statute, N.C.G.S. § 48-29, to be issued, showing Daniel as the father and Virginia as the mother of the two children. A new family came into being on the date of adoption. Daniel and Virginia became the ancestors of these children who became lineal descendants of the union of Daniel and Virginia. Adoption effects a complete substitution of *families* and makes the child legally a stranger to the *bloodline* of his natural parents. *Crumpton v. Mitchell*, 303 N.C. 657, 665, 281 S.E. 2d 1, 6. *See also Pittman v. Pittman*, 73 N.C. App. 584, 586, 327 S.E. 2d 8, 10 (1985); McCall, *North Carolina's New Intestate Succession Act—Its History and Philosophy*, 39 N.C. L. Rev. 1, 14 (1960).

Respondents further argue that the term "lineal descendants" does not expressly include adopted children. The "lineal descendants of a person means all children of such person and successive generations of children of such children." N.C.G.S. § 29-2(4) (1984). There is no question but that these children are Virginia's children and therefore are her "lineal descendants." They became lineal descendants of Daniel upon adoption because they became in law his children. If Daniel had predeceased Virginia and Virginia had duly dissented from his will, there is no doubt but that Virginia would have received her full intestate share. Daniel, like Virginia, had lineal descendants surviving him by his first marriage (his natural children not adopted by Vir-

ginia). Yet, he would have been survived also by lineal descendants *by* his second marriage (the two minor children he adopted with his wife's consent). These same two children who are lineal descendants by the marriage of Virginia and Daniel cannot also be lineal descendants by the marriage of Virginia and Mr. Duncan by the fortuitous event of Virginia's predeceasing Daniel rather than vice versa. Respondents concede that the children must be lineal descendants *of one marriage or the other.*

The oft-quoted passage below again bears repeating:

Here is a simple and clear rule which eliminates all doubt as to the standing and rights of an adopted child. For all legal purposes he is in the same position as if he had been born to his adoptive parents at the time of the adoption. There is no need for any learned and complicated interpretations. Whatever the problem is concerning an adopted child, his standing and his legal rights can be measured by this clear test: "What would his standing and his rights be if he had been born to his adoptive parents at the time of the adoption?" If lawyers and courts will look to this plain language of the statute, and avoid making exceptions not made in this statutory statement, persons adopting children in North Carolina can legally realize what they have hoped for, namely that the child they adopt will become their child, theirs fully, just as if he had been born to them, and without any exceptions and qualifications imposed by law to thwart their purpose.

*A Survey of Statutory Changes in North Carolina in 1955*, 33 N.C. L. Rev. 513, 522 (1955) (footnote omitted).

Both parties recognize the import of the role of public policy and a determination of legislative intent in reaching a decision in this case. We find no indication of legislative intent to carve out a special exception to the well-settled law and public policy of this state that adopted children of a marriage be afforded the same legal status as natural children born of that marriage. Moreover, we would question the propriety of respondents' position that the legislature intended to treat couples who choose to have the stepparent adopt the stepchildren differently from those couples who decide to parent their own natural children.

In considering the constitutionality of N.C.G.S. § 30-3(b), this Court noted that "[t]he reasons that impelled the inclusion of this unusual provision in the 1959 Act are unclear." *Vinson v. Chappell*, 275 N.C. 234, 239, 166 S.E. 2d 686, 690. The Court noted, however, that "[u]ndoubtedly, by reason of G.S. 30-3(b), a testator (testatrix) who has a child or lineal descendant by a former marriage has greater freedom of testation *as against* a childless 'second or successive spouse.'" *Id.* at 240, 166 S.E. 2d at 691 (emphasis in original). The Court went on to say that "the legislative intent was *to enable* a person who has a child or lineal descendant by a former marriage to make greater provision for such child or lineal descendant." *Id.* (emphasis in original). The couple in *Vinson* had no children of their own, natural or adopted, but the husband was survived by two daughters from his former marriage. The fact that the Vinsons had *no* children of their own, coupled with the provision of § 30-3(b), operated to give Mr. Vinson greater testamentary freedom to make provisions for his children from his former marriage without the threat of his successive wife's dissenting from his will and effectively depleting his estate intended to provide comfort and support for his children from the previous marriage—the only children he ever had.

The greater freedom of testamentary disposition, recognized in *Vinson* as intended by § 30-3(b), is curtailed when the testator remarries and "lineal descendants" are produced by that union. In the instant case, Virginia's voluntary choice in consenting to the adoption by her husband of her two minor children was tantamount to the couple's producing their own offspring. Had Virginia intended to reduce Daniel's distributive share upon his inevitable dissent from her will, she could have withheld her consent to the adoption petition. "'In making a will a husband (or wife) is presumed to have knowledge of and to have taken into consideration the statutory right of his widow to dissent from the will. G.S. 30-1.'" *Vinson v. Chappell*, 275 N.C. 234, 238, 166 S.E. 2d 686, 690 (quoting *Keesler v. Bank*, 256 N.C. 12, 18, 122 S.E. 2d 807, 812 (1961)).

A further explanation for the legislative intent in enacting N.C.G.S. § 30-3(b) was offered in *Phillips v. Phillips*, 296 N.C. 590, 252 S.E. 2d 761 (1979), in which then Chief Justice Sharp wrote, "Apparently this statute was passed to protect a testator's children by a former spouse against a 'fortune-hunting' second or suc-

cessive spouse." *Id.* at 606, 252 S.E. 2d at 771. Consistent with this Court's observations in *Vinson* and *Phillips,* we believe that N.C.G.S. § 30-3(b) was enacted for the protection of a testator's children by a former spouse on the assumption that a second or successive spouse would not feel as compelled to provide for the stepchildren upon testator's death as would the testator in his will. Indeed, the surviving spouse could not be compelled by law to provide for children who are not his own from funds received by that spouse upon dissent from the testator's will. The situation upon which this assumption, correct in many cases, is based does not exist in the instant case. The surviving second spouse, Daniel, not only *felt* compelled to provide for his wife's minor children of a previous marriage, he caused himself to become legally *bound* to do so by adopting the children with their mother's consent. Virginia's concern for the well-being of her young children and her desire that they be provided for and raised by a father—her husband—was undoubtedly a central factor in her decision to consent to the adoption.

In *Crumpton v. Mitchell,* 303 N.C. 657, 281 S.E. 2d 1, this Court held that children who are "adopted out of" a family do not take as "issue" of their biological grandmother in the absence of a contrary intent plainly appearing by the terms of a deed. We find the following passage from *Crumpton* particularly appropriate here. Justice Exum wrote:

> Given the legislative intent that the legal effect of a final order of adoption shall be *substitution of the adoptive [family] in place of the natural family* and severance of legal ties with the child's natural family, the implication is clear that the legislature intended that *children adopted out of a family would, for all legal purposes, no longer be a part of that family.* We are convinced the *severance of legal ties with the child's natural family was not intended to be partial. It is most unlikely that in enacting G.S. 48-23 the legislature intended the child would for some purposes remain legally in its natural bloodline.* Such a construction violates the spirit of the act and thwarts that which the act seeks to accomplish.

> Instead, we view G.S. 48-23 to mean that upon a final order of adoption the severance of legal ties with the child's

natural family is total. *The child acquires full status as a member of his adoptive family* and in so doing is *for all legal purposes removed from his natural bloodline.*

*Id.* at 664-65, 281 S.E. 2d at 6 (emphasis added).

We therefore hold that the natural children of a testatrix, born of a previous marriage and duly adopted by her second husband, are considered to be her lineal descendants by the second marriage for purposes of determining the second spouse's distributive share upon his dissent from the testatrix's will pursuant to N.C.G.S. § 30-3(b). The decision of the Court of Appeals is affirmed.

Affirmed.

Justice EXUM dissenting.

I do not agree with the Court's conclusion that by reason of the adoption of the two children by the second spouse of their natural mother their previous relationship to their mother is changed and they become lineal descendants of their mother by her second marriage. Of this *marriage* there are no lineal descendants. The statute on dissents, N.C.G.S. § 30-3(b), reduces the intestate's share of the dissenting second surviving spouse if, among other things, the testator has no lineal descendants of the marriage to the second spouse. There being no question in the case about other conditions of this statute having been met, the surviving spouse's share should be reduced in accordance with the statute's terms.

I would hold, for purposes of determining Daniel Edwards' dissenting share, that the children of testator whom he adopted remained testator's lineal descendants from her first marriage. This seems to me the most principled result under the plain language of the pertinent statutes and the factual peculiarities of this case.

The majority errs first in its interpretation and application of the dissenting second spouse statute, N.C.G.S. § 30-3, and second in its analysis of testator's relationship to her two children whom Edwards, petitioner herein, adopted. The majority has circumvented the plain language of the dissenting second spouse

statute, N.C.G.S. § 30-3, and this Court's five-part construction of that statute as enunciated in *Vinson v. Chappell*, 275 N.C. 234, 166 S.E. 2d 686 (1969). The statute and *Vinson* focus on the relationship of testator and *his* or *her* lineal descendants by the first or second marriage. What the statute deems important is the testator's relationship to the children, not the surviving second spouse's relationship to them. I acknowledge Richard and Lucile became Daniel Edwards' lineal descendants when he adopted them. This, however, is not the determinative relationship for calculating his dissenting share. The majority circumvents N.C.G.S. § 30-3 by wrongly focusing on the "marriage" or "bloodline" from which Richard and Lucile are considered to have descended. We must determine whether they became *testator's* lineal descendants during her second marriage.

Second, the majority errs in asserting the two children became testator's lineal descendants by her second marriage because Edwards adopted them. It arrives at this mistaken conclusion by confusing the ramifications of simultaneous adoption by both a husband and wife of a child who previously was a legal stranger to them, and the singular adoption by a stepparent of his or her spouse's child(ren). These are different events which call for different results.

Adoption is a personal, singular process. Chapter 48 of our General Statutes, which deals with adoption, discusses "petitioner" in the singular and never, as the majority seems to assert, mentions adoption by a family. *See, e.g.*, N.C.G.S. § 48-4(a), (b) (1984). Perhaps the more common perception of adoption is where a husband and wife simultaneously adopt a child who was born to others (the biological mother and father) and was related to neither adoptive parent before adoption. The majority correctly states the result under our statutes and cases in that instance: all ties with the biological father, mother and relatives are extinguished, thereby preventing, for example, biological parents and children from inheriting through or from one another. But the majority misapplies that doctrine to the case at hand, where only one adoptive parent replaces only one corresponding biological parent. Thus, the authority cited in support of the majority opinion, notably the opinion I authored in *Crumpton v. Mitchell*, 303 N.C. 657, 281 S.E. 2d 1 (1981), is inapposite.

Neither a "family" nor a "couple" adopted Virginia Edwards' two youngest children; one man, their stepfather Daniel Edwards, did. Testator and her five children constituted a family before Edwards adopted the two youngest children of his second wife. A truer rendition of the facts would be that Richard and Lucile, the children Edwards adopted, gained a new father. They had and continue to have a biological family composed of their mother and their siblings. Their adoptive father replaced only their biological father and extinguished the adopted children's ties only with their biological father and *his* bloodline.

N.C.G.S. § 48-7(d) dictates "this adoption [notwithstanding the consent of the biological parent] shall not affect the relationship of parent and child between such spouse [here, testator] and the child." Although the majority strains to reach a different result by saying the relationship remains intact "in this limited situation," I read "shall not affect" to mean exactly that, without limitation. The relationship between testator and her natural children remained unchanged despite the children's acquisition of a new father and the resulting obliteration of any relationship with their biological father and his blood relatives.

In summary, the principle the majority fails to apprehend is that adoption is an act by an individual, and a new relationship results only to the extent a new parent replaces a biological or previous adoptive one. Thus, testator did not *become* the mother and ancestor of Richard and Lucile upon their adoption by Edwards.

Nor does my position undermine what the majority correctly perceives to be the legislature's intent to have adopted children treated legally in all respects as natural children. Richard and Lucile will under my view of the case enjoy the same legal status and rights vis-a-vis Edwards as Edwards' biological children. The only party whose rights are in question in this case is Edwards. My view carves out no special exception regarding the rights of adoptive children; under it Richard and Lucile's rights would be unaffected. On the other hand the majority's position seriously undermines the testator's testamentary intent to the detriment of all her children, an intent which, under the circumstances here, the dissenting second spouse statute was designed to protect.

The Court's argument that it promotes the policies underlying our adoption statute to consider an adoption by one of the parties to a marriage to be an adoption by the marriage has disturbing ramifications. That the General Assembly did not intend this result is clear when the second proviso of N.C.G.S. § 48-4(b) is considered:

> Provided further that if the petitioner is the biological parent of the child to be adopted and the other biological parent [not the spouse of the adopting parent] of the child is living, the spouse of the petitioner may choose not to join in the petition but shall indicate agreement to the proposed adoption by affidavit which shall be incorporated into the adoption proceeding.

Suppose two children were born to the marriage of mother $A$ and father $B$. $B$ thereafter died and $A$ married $C$, who subsequently became the father of an illegitimate child by a woman other than his spouse. $C$ adopted the illegitimate child with $A$'s consent but not joinder. Clearly the child's natural mother would continue to be its mother for all purposes, and her relationship to the child would be unchanged. If $A$ and $C$ together produced no natural children, upon $A$'s death, $C$ should not be able to claim under the second surviving spouse statute that $A$ was survived by lineal descendants of the second marriage simply because $C$ adopted his own natural child during that marriage. The two provisos of N.C.G.S. § 48-4(b), if properly construed, militate clearly against such a result. Yet under the Court's "adoption by marriage" approach, $C$'s argument would prevail.

Finally I disagree with the majority's conclusion that testator somehow "joined in" the adoption by virtue of her consent to it and this "was tantamount to the couple's producing their own offspring." The majority concludes testator could not have joined in the adoption under the law as it existed when the adoption took place; therefore having done all she was legally permitted to do she should be considered as actually having joined in the adoption. I disagree. N.C.G.S. § 48-4(b), enacted in 1949, states a spouse in testator's position "need not join in the petition," thus implying testator, had she desired, could have joined in the 1970 adoption of the children by Edwards. Further, by stating "the spouse of the petitioner may choose not to join in the petition, but

shall indicate agreement to the proposed adoption," *id.*, the legislature distinguished between joining in and consenting to an adoption and signaled its intent to be that consent is not tantamount to joining in an adoption. It is certainly, therefore, not tantamount to the biological mother and adoptive second husband father producing their own offspring.

For all of the foregoing reasons I vote to reverse the Court of Appeals.

Justices FRYE and BILLINGS join in this dissenting opinion.