IN THE SUPREME COURT OF NORTH CAROLINA

No. 41A20

Filed 11 December 2020

IN THE MATTER OF: Z.O.G.-I.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 17 October 2019 by Judge Angela C. Foster in District Court, Guilford County. This matter was calendared for argument in the Supreme Court on 23 November 2020 but determined on the records and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*
>
> *Womble Bond Dickinson (US) LLP, by Lawrence F. Matthews, for appellee Guardian ad Litem.*
>
> *Christopher M. Watford for respondent-appellant father.*

NEWBY, Justice.

Respondent, the father of fifteen-year-old minor child Z.O.G.-I. (Zander),[1] appeals from the trial court's order terminating his parental rights based on the grounds of neglect and willful failure to make reasonable progress to correct the conditions that led to the child's removal from his care. Because the trial court determined that termination of respondent's parental rights was in Zander's best

---

[1] A pseudonym is used to protect the juvenile's identity and for ease of reading.

interests due in part to a misapprehension of the legal effects of the termination, we vacate the dispositional portion of the trial court's order and remand for entry of a new dispositional order.

On 14 October 2016, the Guilford County Department of Health and Human Services (DHHS) obtained nonsecure custody of Zander and filed a petition alleging that he was a neglected and dependent juvenile. The petition alleged that Zander's mother had a history with Child Protective Services due to issues with mental health, substance abuse, and housing. In-home services had been provided to the mother on multiple occasions with the most recent case being closed in June 2016. The petition alleged that the mother had been diagnosed with schizoaffective disorder, bipolar disorder, and depression and that she was not complying with her mental health and substance abuse treatment. At the time of the filing of the petition, respondent was incarcerated and scheduled to be released in the Spring of 2017. DHHS spoke with respondent on 13 October 2016, and respondent requested that Zander be placed with his paternal grandmother, Ms. R., but she had already declined to care for Zander several months earlier.

Following a 3 March 2017 hearing, the trial court entered an order on 11 April 2017 adjudicating Zander to be a dependent juvenile. The trial court found that the mother consented to a finding of dependency based on stipulated facts regarding her noncompliance with her mental health and substance abuse treatment and found

that DHHS dismissed the neglect allegation. Respondent was incarcerated at the time of the hearing but was scheduled to be released a few months later.

Respondent was released from incarceration on 15 June 2017. Due to scheduling conflicts, a Child and Family Team Meeting was not held until 10 October 2017. Respondent entered into a case plan with DHHS on 11 October 2017 which required him to maintain suitable housing for himself and Zander and provide documentation of a lease or rental agreement and all utilities; complete a parenting/ psychological evaluation and follow all recommendations; participate in shared parenting with Zander's caregivers; attend all scheduled visitations and demonstrate appropriate parenting skills; comply with child support requirements; obtain adequate income to meet the basic needs of his family through employment or disability, and provide DHHS with verification of his income; complete a substance abuse assessment and follow all recommendations; and submit to random drug screens within twenty-four hours of a request. A permanency-planning order was entered on 21 November 2017 setting the primary permanent plan as reunification with a concurrent secondary plan of adoption. The trial court ordered respondent to comply with the components of his case plan and allowed him four to five hours of supervised visits with Zander per month.

Following a 2 March 2018 review hearing, the trial court changed the permanent plan to adoption with a concurrent secondary plan of reunification on 12 April 2018 but stayed the filing of a petition for termination of parental rights until

the next court hearing on 25 April 2018. The trial court found that respondent obtained housing with his girlfriend on 15 December 2017 and submitted a copy of a lease at the court hearing. The trial court found that he was employed but needed to provide documentation of his employment to DHHS. The trial court also found that respondent had not yet scheduled his parenting/psychological evaluation and was not participating in shared parenting. Respondent also tested positive for marijuana in August and October 2017. Respondent completed a substance abuse assessment on 12 November 2017, and no substance abuse diagnosis was made. Respondent had been incarcerated from 25 January 2018 to 27 February 2018, but the charges were later dismissed. The trial court found that neither parent was making adequate progress on their case plans within a reasonable time period, but that respondent was making some progress. The trial court ordered respondent to comply with his case plan and cooperate with DHHS and allowed him one hour of supervised visits per week.

The trial court entered another permanency planning order on 24 May 2018 lifting the stay on the termination of parental rights and ordering DHHS to file a petition within sixty days. The trial court found that respondent was not participating in shared parenting, had not yet set up his visitation with Zander, was not complying with requested drug screens, and was unemployed due to an alleged medical injury. Although respondent had submitted a lease agreement at the previous hearing, he did not know his address, and a home study could not be

completed by DHHS. DHHS filed a petition to terminate respondent's parental rights on 18 July 2018 alleging the grounds of neglect and willful failure to make reasonable progress to correct the conditions that led to Zander's removal from the home. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019).

A subsequent permanency planning order was entered on 7 August 2018. The trial court found that respondent had not scheduled his parenting/psychological evaluation, had not submitted to any drug screen, had not attended any visits with Zander, and was not participating in shared parenting. Respondent had also been unemployed since March 2018 due to a purported back injury but had not provided any documentation of the injury. A completed home study found the home to be appropriate, but DHHS did not approve the home study due to respondent's lack of compliance with his case plan.

The hearing on the petition to terminate parental rights began on 30 April 2019 and, after multiple continuances, concluded on 17 September 2019. In an order entered on 17 October 2019, the trial court concluded that grounds existed to terminate respondent's parental rights based on N.C.G.S. § 7B-1111(a)(1) and (2). The trial court also concluded that termination of respondent's parental rights was in Zander's best interests. *See* N.C.G.S. § 7B-1110(a) (2019). Accordingly, the trial court terminated respondent's parental rights. Respondent appeals, challenging the trial court's adjudication that grounds existed to terminate his parental rights and

its dispositional determination under N.C.G.S. § 7B-1110(a) that termination of his parental rights was in Zander's best interests.

We review a trial court's adjudication that grounds existed to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). "Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *Id.* at 407, 831 S.E.2d at 58–59 (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

Under N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the trial court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2019). "[A] finding that a parent acted 'willfully' for purposes of N.C.G.S. § 7B-1111(a)(2)

'does not require a showing of fault by the parent.' " *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (quoting *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996)). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). " '[A] respondent's prolonged inability to improve [his or] her situation, despite some efforts in that direction, will support a finding of willfulness "regardless of [his or] her good intentions," ' and will support a finding of lack of progress . . . sufficient to warrant termination of parental rights under section 7B-1111(a)(2)." *In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71 (first and fourth alterations in original) (citations omitted).

> According to N.C.G.S. § 7B-904(d1)(3)[ (2019)], a trial judge has the authority to require the parent of a juvenile who has been adjudicated to be abused, neglected, or dependent to "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent, guardian, custodian, or caretaker."

*In re B.O.A.*, 372 N.C. 372, 381, 831 S.E.2d 305, 311–12 (2019) (second alteration in original). This Court has consistently recognized

> that parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2) even when there is no direct and immediate relationship between the conditions addressed in the case plan and the circumstances that led to the initial governmental

intervention into the family's life, as long as the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile's removal from the parental home.

*Id.* at 384, 831 S.E.2d at 313–14.

I.

In determining that respondent failed to make reasonable progress, the trial court found respondent "had the opportunity to correct the conditions that led to the juvenile's removal from the home, including but not limited to being offered a service agreement," which he entered into on 11 October 2017. The trial court made the following findings of fact addressing respondent's progress in complying with his service agreement:

> 20. . . . [Respondent] agreed to address the following conditions:
>
> a. Housing – [Respondent] agreed to obtain suitable housing for himself, his child and provide documentation of his lease/rental agreement and utilities. [Respondent] provided what he reported was a copy of his lease to the [c]ourt and [DHHS] on March 2, 2018 with sufficient address information. The assigned social worker made a referral to Catawba County to complete a home study on [respondent's] home, which he reported was in Catawba County. The home study was denied because he was not taking drug screens.
>
> b. Income – [Respondent] agreed to have adequate income to meet the basic needs of his family through employment or disability, and provide proof of income to [DHHS]. [Respondent] remains unemployed. He reports that this is a result of a back injury, but he has

not provided any verification of the injury and is not receiving disability income. He has not filed for disability and does not have a doctor's note stating he is unable to work. The source of [respondent's] income is his girlfriend who pays the bills and provides for all of his needs. He stated that he is unemployed due to visits with the juvenile and that his girlfriend agreed he would take care of their kids while she worked. He does not know his girlfriend's income and, therefore, the [c]ourt cannot determine if there is sufficient income in the home to support this juvenile in the home as he already has three other kids in the home. [Respondent] quit his job in 2018 and has applied to work at four or five temporary agencies but states he cannot take positions due to visits that occur one day per week. [Respondent] remains unemployed.

c. Parenting – [Respondent] agreed to complete a parenting/psychological evaluation, to follow all recommendations, participate in shared parenting, and attend visits as scheduled. [Respondent] attended a parenting psychological on January 3, 2019, with Agape Psychological Consortium, LLC. [Respondent] agreed to take Parenting Assessment Training Education (PATE) Program classes and has met with Demetria Powell-Harrison twice. [Respondent] completed his test and assessment received by [DHHS] on March 6, 2019. Social Worker discussed the results with [respondent] on March 8, 2019. [Respondent] is allowed supervised visits once a week for one hour per visit. [Respondent's] visits were originally inconsistent, however, since September 21, 2018, [respondent] began being very consistent with his visits and is participating in shared parenting with the foster parents. He has participated in a meeting with Milicent Day and requested that the foster parents be included in those sessions. He has failed to obtain individual therapy which was recommended by Dr. Morris in his parenting psychological evaluation. [Respondent] thought therapy was only optional though the social worker had informed him he was required to attend individual

therapy.

    d.  Substance Abuse – [Respondent] agreed to participate in a substance abuse assessment and follow all recommendations, and submit to random drug screens in order to demonstrate his sobriety. [Respondent] has a significant substance abuse history. He was convicted of Felony Possession Controlled Substance with Intent to Sell (four counts) in 2016 and has a misdemeanor conviction of Possession of Drug Paraphernalia from 2012. [Respondent] completed a substance abuse assessment on November 12, 2017 with Joe Fortin. Mr. Fortin did not make a substance abuse diagnosis at that time. [Respondent] had not been complying with drug screen requests and has not demonstrated his sobriety in 2017.

On November 2, 2018, [respondent] completed a second assessment with Joe Fortin, and he was diagnosed with Cannabis Use Disorder, mild and he ruled out Cocaine Use Disorder. As of February 1, 2019, [respondent] has met with Joe Fortin six out of 8 times. However he missed a session on February 8, 2019. Social Worker inquired about this and [respondent] reported that he did not know the time his classes were being held. However, classes are the same each week and Social Worker again informed him of this.

The trial court also found that respondent tested negative on at least twenty-three drug screens requested between April 2018 and April 2019. But, he tested positive for cocaine and marijuana on 10 October 2018 and tested positive for marijuana on 5 March 2019. Additionally, the trial court found that DHHS requested a drug screen on 18 February 2019 and, although respondent tested negative, he did not comply with DHHS's policy of completing the drug screen within twenty-four hours of the request. The trial court also found that respondent admitted to using marijuana twice

in the months before the termination hearing, including three weeks before the 17 September 2019 hearing date, and that respondent's substance abuse counseling had not been effective. Finally, the trial court found that respondent "made only minimal progress in demonstrating that he can provide adequate care and supervision and a safe home to [Zander]." Respondent does not challenge any of these findings, and they are binding on appeal. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58.

Respondent first argues that "[t]he trial court never provided formal guidance on what was required of [respondent] to demonstrate a change of conditions" or the reasons for Zander's removal. Respondent further claims he had made reasonable progress at the time of the termination hearing on 17 September 2019 because he had maintained a residence with his girlfriend and their children for over two years; he participated in substance abuse programs and produced multiple negative drug screens throughout the case; and he improved his parenting skills, was participating in co-parenting with the foster parents, and was consistently visiting with Zander.

Respondent also asserts that he did not willfully leave Zander in foster care and that his progress was reasonable under the circumstances given his challenges with finances and transportation. Respondent argues that the trial court did not make a finding that he maintained the ability to comply with the case plan or that he was "unwilling to make the effort." *See In re McMillon*, 143 N.C. App. at 410, 546 S.E.2d at 175.

Here Zander was adjudicated to be a dependent juvenile based, in part, on respondent's inability to care for Zander due to his incarceration and his lack of an appropriate alternative child care arrangement. Respondent's case plan was designed to address his ability to appropriately care for Zander by obtaining a stable home and income, learning appropriate parenting skills, and addressing his substance abuse issues. Respondent was clearly put on notice of the conditions he needed to address when he entered into the service agreement. Indeed, the trial court consistently ordered him to comply with the requirements of his service agreement in each of its permanency planning orders. Therefore, respondent's argument that he was never provided formal guidance on what he was required to do to demonstrate changed conditions is without merit.

At the termination hearing, respondent testified that he was not able to start the parenting/psychological evaluation before January 2019 due to transportation issues. He also testified that he asked to take the evaluation in Catawba County, but he was told that he would have to pay for it himself, and that he did not have a job to earn money to pay the fee. Nonetheless, he acknowledged on cross-examination that he never inquired into what it would have cost to have the evaluation done in Catawba County. Respondent also testified that he quit his job in 2018 due to a reoccurring back injury; he also acknowledged that he did not apply for disability in order to obtain income. Respondent did not testify that his proposed issues with finances and transportation prevented him from participating in individual therapy,

applying for disability, providing DHHS with verification of his injury, or abstaining from drug use.

The trial court found that respondent failed to obtain sufficient income to support Zander, failed to comply with the individual therapy recommendations of his parenting/psychological evaluation, and failed to address his substance abuse issues. The findings show that respondent did not obtain income through employment or disability. He quit his job in 2018 due to an alleged back injury and had not worked since. He did not provide verification of his injury and did not apply for disability benefits. Respondent instead relied on his girlfriend's income but did not know how much money she made, leaving the trial court unable to determine if her income was sufficient to support the family.

The unchallenged findings also show that although respondent was consistently visiting with Zander at the time of the termination hearing, he did not do so until over a year after he was released from incarceration and two months after the petition was filed. Respondent continued to use marijuana after the filing of the termination petition and after the termination hearing had started. Respondent admitted to using marijuana twice in the months leading up to the September 2019 hearing date and as recently as three weeks before the hearing. Respondent has not specifically challenged any of the above findings, rendering them binding on appeal. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58. These unchallenged findings support the trial court's ultimate finding and conclusion that respondent failed to

make reasonable progress under the circumstances to correct the conditions that lead to removal.

As the fact-finder, the trial court was entrusted with evaluating the credibility of respondent's testimony and the weight it is afforded. *See In re S.C.R.*, 198 N.C. App. 525, 531–32, 679 S.E.2d 905, 909 (2009). Although respondent made some progress on his case plan, the findings in the trial court's order and unchallenged findings support the trial court's ultimate finding and conclusion that respondent willfully failed to make reasonable progress to correct the conditions that led to Zander's removal. Here the trial court weighed the evidence and ultimately determined that respondent "made only minimal progress in demonstrating that he can provide adequate care and supervision and a safe home to [Zander]," and therefore he willfully failed to make reasonable progress under the circumstances to correct the conditions that led to Zander's removal. Therefore, we affirm the trial court's adjudication of grounds under N.C.G.S. § 7B-1111(a)(2). As such, we need not address respondent's arguments regarding the ground of neglect. *In re S.E.*, 373 N.C. 360, 367, 838 S.E.2d 328, 333 (2020).

## II.

Respondent also challenges the trial court's dispositional determination under N.C.G.S. § 7B-1110(a) that termination of his parental rights was in Zander's best interests. Respondent does not contend that the trial court failed to consider and make findings on the relevant statutory factors. Instead, he argues the trial court

erred because the trial court's decision to terminate respondent's parental rights is inconsistent with its conclusion about Zander's best interests.

In determining whether termination of parental rights is in the juvenile's best interests,

> the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. 3, 6, 832 S.E.2d 698, 700 (2019). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

Zander, who was approaching his fourteenth birthday at the time, testified that his placement with his foster parents was "wonderful[,]" but that he did not want to be adopted and wanted to live with respondent because he felt that he "need[ed] [respondent] in [his] life." Zander also testified that he would "be devastated" if the court were to terminate respondent's parental rights. In the termination order, the trial court found that there was a strong bond between Zander and respondent and that Zander had testified he wanted to live with respondent and did not want to be adopted. The trial court also found as follows: Zander was 13 years old; there was a high likelihood of adoption; the primary permanent plan was adoption; terminating respondent's parental rights would aid in accomplishing that plan; the relationship between Zander and his foster parents was stable, and they wished to adopt him; and the foster parents had agreed to allow respondent to continue to contact Zander and to continue co-parenting. Respondent does not challenge these findings and, therefore, they are binding on appeal. *In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58.

In the order terminating respondent's parental rights, the trial court also decreed that "[DHHS] shall ensure that [respondent] is allowed continued co-parenting of [Zander]" and that it "hereby honors the request of [Zander] not [to] be adopted pursuant to N.C.G.S. § 48-3-603(b)." Respondent argues that this is "contrary to" the legal consequences of a termination of parental rights under section 7B-1112, which "call[s] for a complete and total severance" of the parent-child relationship. *See* N.C.G.S. § 7B-1112 (2019). According to respondent, the trial court's decree

"effectively frustrates the permanent plan of adoption and creates the prospect that Zander is now a 'legal orphan.'" We agree the matter should be remanded for a proper best interests determination.

Section 7B-1112 provides that

> [a]n order terminating parental rights completely and permanently terminates all rights and obligations of the parent to the juvenile and of the juvenile to the parent arising from the parental relationship, except that the juvenile's right of inheritance from the juvenile's parent shall not terminate until a final order of adoption is issued.

N.C.G.S. § 7B-1112; *see also Owenby v. Young*, 357 N.C. 142, 145, 579 S.E.2d 264, 267 (2003) ("With the exception of a child's right to inherit from a parent, a termination of parental rights order completely and permanently severs all rights and obligations of the parent to the child and the child to the parent."). The "[t]ermination of parental rights makes a child available for adoption by another person, rendering the child a legal stranger to the biological parent." *Huml v. Huml*, 264 N.C. App. 376, 398, 826 S.E.2d 532, 547 (2019) (citing *In re Estate of Edwards*, 316 N.C. 698, 706, 343 S.E.2d 913, 918 (1986)). A decree that a biological parent be allowed to continue to co-parent a minor child is at odds with the determination that the complete and permanent severance of parental rights and obligations is in the juvenile's best interests.

The trial court's decision here to order both that respondent's parental rights be terminated and that DHHS ensure respondent is allowed to continue co-parenting

Zander suggests a misapprehension of the legal effects attendant to terminating parental rights. Perhaps the trial court had in mind a type of guardianship arrangement, which does not require termination of parental rights. In such a situation, the proper remedy is to remand for reconsideration. *Cf. In re Estate of Skinner*, 370 N.C. 126, 146, 804 S.E.2d 449, 462 (2017) ("It is well-established in this Court's decisions that a misapprehension of the law is appropriately addressed by remanding the case to the appropriate lower forum in order to apply the correct legal standard."). Therefore, we remand this case to the trial court for reconsideration of its decision that the termination of respondent's parental rights was in Zander's best interests.

In conclusion, we affirm the trial court's adjudication that grounds existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(2); however, we vacate the dispositional portion of the trial court's order and remand the matter to the trial court for a new dispositional determination. The trial court may, in the exercise of its discretion, receive additional evidence on remand if it elects to do so. *See In re K.N.*, 373 N.C 274, 285, 837 S.E.2d 861, 869 (2020).

AFFIRMED IN PART; VACATED AND REMANDED IN PART.